# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2020AP925 |

| | |
|---|---|
| COMPLETE TITLE: | James Cobb and Judith Cobb,<br>             Plaintiffs-Appellants-Cross-<br>Respondents-Petitioners,<br>       v.<br>Gary A. King,<br>             Defendant-Respondent-Cross-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
(2021 – unpublished)

| | |
|---|---|
| OPINION FILED: | July 6, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 2, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Oconto |
| JUDGE: | Jay N. Conley |

JUSTICES:

Per curiam. ANN WALSH BRADLEY, J., filed a concurring opinion, in which DALLET, J., joined. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion. HAGEDORN, J., filed a dissenting opinion.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiffs-appellants-cross-respondents-petitioners, there were briefs filed by *George Burnett, Laina P. Stuebner*, and *Law Firm of Conway, Oleniczak & Jerry, S.C.*, Green Bay. There was an oral argument by *George Burnett*.

For the defendant-respondent-cross-appellant, there was a brief by *Josiah R. Stein* and *Law Office of Josiah R. Stein, LLC*, Green Bay. There was an oral argument by *Josiah R. Stein*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP925
(L.C. No. 2018CV139)

STATE OF WISCONSIN    :    IN SUPREME COURT

**James Cobb and Judith Cobb,**

    **Plaintiffs-Appellants-Cross-Respondents-Petitioners,**

    **v.**

**Gary A. King,**

    **Defendant-Respondent-Cross-Appellant.**

**FILED**

**JUL 6, 2022**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Dismissed as improvidently granted.*

¶1 PER CURIAM. James and Judith Cobb petitioned for review of a decision of the court of appeals, Cobb v. King, No. 2020AP925, unpublished slip op. (Wis. Ct. App. May 11, 2021), which affirmed the circuit court's grant of summary judgment to Gary King. After reviewing the record and the briefs, and after hearing oral arguments, we conclude that this matter should be dismissed as improvidently granted.

*By the Court.*—The review of the decision of the court of appeals is dismissed as improvidently granted.

¶2 ANN WALSH BRADLEY, J. *(concurring).* I write separately because, as I have written in the past, I believe that this court should explain to the litigants and the public the reason for the dismissal. See Fond du Lac County v. S.N.W., 2021 WI 41, ¶3, 396 N.W.2d 773, 958 N.W.2d 530 (Ann Walsh Bradley, J., dissenting).

¶3 Although the court has been inconsistent, in my view the court's general practice should be to provide an explanation for a dismissal of a petition for review as improvidently granted. See id., ¶¶6-10. It is the least we can do for parties who have expended substantial time, energy, and money litigating this case and seeking a resolution from this court.

¶4 After reviewing the court of appeals opinion, together with the record and the briefs, and after hearing oral arguments, this review is deemed improvidently granted. The issues for which we took the case will not lead to any further development, clarification, or harmonization of the law. See Wis. Stat. § (Rule) 809.62(1r) (2019-20). Thus, further review by this court and publication of an opinion would not serve any purpose.

¶5 For the foregoing reasons, I respectfully concur.

¶6 I am authorized to state that Justice REBECCA FRANK DALLET joins this concurrence.

¶7   REBECCA GRASSL BRADLEY, J.   *(dissenting).*

It must not be.  There is no power in Venice
Can alter a decree established.
'Twill be recorded for a precedent,
And many an error by the same example
Will rush into the state.  It cannot be.

William Shakespeare, The Merchant of Venice act 4, sc. 1, ll. 215-19 (Jay L. Halio ed., 1993) (statement of the character Portia).

¶8   A majority of this court forgoes an opportunity to correct an objectively erroneous interpretation of law.  In Borek Cranberry Marsh, Inc. v. Jackson County, this court created a flawed——yet binding——precedent, which requires lower courts to ignore the plain meaning of Wis. Stat. § 706.10(3). 2010 WI 95, 328 Wis. 2d 613, 785 N.W.2d 615.  This court should adopt a meaning grounded in the statutory text.

¶9   Wisconsin Stat. § 706.10(3) states, "[i]n conveyances of lands words of inheritance shall not be necessary to create or convey a fee, and every conveyance shall pass all the estate or interest of the grantor unless a different intent shall appear expressly or by necessary implication in the terms of such conveyance."  In Borek, this court held both clauses of § 706.10(3) apply to easements, although it acknowledged "a cursory reading of § 706.10(3) might suggest that its provisions do not govern easements[.]"  328 Wis. 2d 613, ¶22.  It then muddled the language of the two clauses and concluded § 706.10(3) creates a presumption that an easement runs with the land unless the deed creating the easement "expressly or by

1

necessary implication" says otherwise. Section 706.10(3) has nothing to say about whether an easement runs with the land or is personal and non-transferrable.

¶10 Applying a textual methodology of statutory interpretation leads inexorably to the conclusion that the statute's first clause governs only a document creating or conveying a fee. See generally State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110 (embracing the textualist approach to statutory interpretation). The court was not asked to interpret such a document in Borek, nor has it been asked to in this case.

¶11 "An easement is something quite different from a fee or a limited fee. In the one case title does not pass, but only a right of use or privilege in the land of another. In the other cases the title does pass, even though the use be limited." Polebitski v. John Week Lumber Co., 157 Wis. 377, 381, 147 N.W. 703 (1914); see also Colson v. Salzman, 272 Wis. 397, 401, 75 N.W. 421 (1956) (citing Polebitski as establishing "that an easement differs from a fee or a limited fee in that in case of an easement title does not pass but only a right to use or privilege in the land of another"). This court did not address Polebitski or other cases reciting this black letter law, although the dissent relied heavily on them. Borek, 328 Wis. 2d 613, ¶57-63 & nn.7-9 (Abrahamson, C.J., dissenting).

¶12 The second clause, while applicable to easements, was irrelevant in Borek, and it is in this case as well. After an

2

easement is created, the second clause codifies a strong presumption that a transfer of the easement passes all interest in the easement. If the interest is only personal, attempting to transfer it does not create a right of transferability. Id., ¶67.

¶13 Only this court can fix its misinterpretation of Wis. Stat. § 706.10(3) in Borek. See Johnson v. Wis. Elections Comm'n, 2021 WI 87, ¶21, 399 Wis. 2d 623, 967 N.W.2d 469 (quoted source omitted). Short of legislative action, unless this court overturns Borek, its erroneous rule will continue to govern easements. This need not be the case. "Because these decisions are objectively wrong, we must overturn them in fulfilling our duty to properly interpret the law." Friends of Frame Park, U.A. v. City of Waukesha, 2022 WI __, ¶42, __ Wis. 2d __, __ N.W.2d __ (Rebecca Grassl Bradley, J., concurring) (citing Wenke v. Gehl Co., 2004 WI 103, ¶21, 274 Wis. 2d 220, 682 N.W.2d 405). I respectfully dissent from the majority's decision not to decide the law.

## I. BACKGROUND

¶14 This case involves a dispute among neighbors. The record contains the diagram below. Gary King's property, shown in purple, is landlocked. The Cobbs' property is shown in yellow. King moves through the Cobbs' property, along the path marked by a series of red "X"s, to enter and exit his property. Whether he has an ingress/egress easement giving him a legal right to move along the path for this purpose turns on whether the Cobbs' predecessors-in-interest conveyed to King's

3

predecessors an easement running with the land or merely a personal, non-transferrable easement.



¶15 In 1978, the Cobbs' predecessors, the Rierdons, granted an ingress/egress easement to the Hessils, King's predecessors. In relevant part, the deed creating the easement states:

> The undersigned, BARBARA RIERDON, GERALD GEHLING AND MARGARET GEHLING, wife of GERALD GEHLING, being holders and owners to the same, do hereby, in consideration of One Dollar and other good and valuable consideration, grant, convey, give over and allow to HERBERT HESSIL and JEAN HESSIL, his wife, a right of ingress and egress for the purpose of vehicular traffic only to the following described property[.]

The easement was recorded with the Oconto County Register of Deeds.

5

¶16 In the 1980s, the Rierdons sold their land to the Cobbs. The land contract noted the property was "SUBJECT to an easement[.]" In 2009, the Hessils conveyed their property to King and Melissa Hermes. This conveyance did not mention the easement. Hermes subsequently executed a quitclaim deed to King.

¶17 The Cobbs sued King, seeking a declaration that the easement conveyed by the Rierdons to the Hessils was personal to the Hessils, i.e., that King has no right to the easement. They also sought injunctive relief. King counterclaimed for a declaration that the easement ran with the land and was transferred to him by the Hessils.

¶18 King moved for summary judgment, which the circuit court granted.[1] The circuit court reasoned that words of inheritance, such as "heirs and assigns," are unnecessary for an easement to run with the land. The Cobbs appealed and lost because the court of appeals was bound by Borek.[2] The court of appeals explained:

> King correctly argues that Borek . . . controls our decision of whether Wis. Stat. § 706.10(3) applies to easements. . . .
>
> The Borek decision made clear that . . . § 706.10(3) applies to easements, thus precluding the Cobbs' argument that the statute does not apply in this case. We are bound by this controlling precedent.[3]

---

[1] The Honorable Jay N. Conley, Oconto County, presided.

[2] Cobb v. King, No. 2020AP925, slip op. (Wis. Ct. App. May 11, 2021) (per curiam).

[3] Id., ¶¶18, 20 (internal citation omitted).

6

This court granted the Cobbs' petition for review.

## II. STANDARD OF REVIEW

¶19 This case presents a question of statutory interpretation, which this court reviews independently. Eau Claire Cnty. Dep't of Hum. Servs. v. S.E., 2021 WI 56, ¶13, 397 Wis. 2d 462, 960 N.W.2d 391 (citing State v. Stephenson, 2020 WI 92, ¶18, 394 Wis. 2d 703, 951 N.W.2d 819). Whether to dismiss a petition as improvidently granted is a discretionary decision. Cf. Wis. Stat. § (Rule) 809.62(1r) (explaining whether to grant a petition is "a matter of judicial discretion").[4]

---

[4] "The construction of an unambiguous deed is . . . a question of law. However, if the language of the deed is ambiguous, then the intent behind the language presents a question of fact." Konneker v. Romano, 2010 WI 65, ¶23, 326 Wis. 2d 268, 785 N.W.2d 432 (citations omitted).

The construction of the deed is beyond the scope of my writing because my primary concern is with the Borek majority's erroneous statutory interpretation. Even if this court overturned Borek, the Cobbs' argument might not prevail for another reason. The circuit court concluded that the easement is appurtenant. An "appurtenant easement" is "[a]n easement created to benefit another tract of land, the use of easement being incident to the ownership of that other tract." Appurtenant easement, Black's Law Dictionary (11th ed. 2019). Arguably, such an easement is presumed to run with the land. See, e.g., Jon W. Bruce & James W. Ely, Jr., The Law of Easements & Licenses in Land § 9:1 (updated Apr. 2022) ("Unless prevented by the terms of its creation, an easement appurtenant is transferred with the dominant property even if this is not mentioned in the instrument of transfer."); 25 Am. Jur. Easements and Licenses § 9 ("[A]n easement appurtenant runs with the land."); 28A C.J.S. Easements § 17 ("An easement appurtenant runs with the land, which is to say that the benefit conveyed by or the duty owed under the easement passes with the ownership of the land to which it is appurtenant.").

7

III. ANALYSIS

A. Borek & Its Clear Errors

¶20 Borek's facts are indistinguishable from the facts of this case. Carl Nemitz purchased an easement from Jackson County. 328 Wis. 2d 613, ¶1. The deed granted water flowage rights to "CARL NEMITZ, his heirs, and assigns" and sand removal rights to "the Grantee," who the document identified as "CARL NEMITZ." Id. Nemitz transferred the land to the Boreks, who then transferred it to Borek Cranberry Marsh, Inc. (BCM). Id. When BCM attempted to remove sand, the county objected, claiming the sand removal rights did not run with the land. Id., ¶2. BCM sued. Id.

¶21 This court held the easement ran with the land. It reasoned Wis. Stat. § 706.10(3) governs easements; then, twisting the text, it concluded the sand removal rights could be transferred because the deed did not contain an "express statement" or "necessary implication" that the easement was "only a limited, non-transferable right[.]" Id., ¶3. The negative implication that could be drawn based on the presence of words of inheritance for the water flowage rights and their conspicuous absence from the sand removal rights was not a "necessary" implication.

Error 1: Ignoring the Text & Mixing Two Independent Clauses

¶22 The Borek majority did not start with the statute's language. "[T]he beginning seems to be more than half the whole, and many of the points being sought seem to become manifest on account of it." Teigen v. Wis. Elections Comm'n,

8

No. 2022AP91, unpublished order (Wis. Mar. 28, 2022) (Rebecca Grassl Bradley, J., concurring) (1 Aristotle, Nicomachean Ethics ch.7 (approximately 340 B.C.)).  An opinion resting on a weak foundation is not be entitled to application of stare decisis. See Johnson v. Wis. Elections Comm'n, 2022 WI 14, ¶259, 400 Wis. 2d 626, 971 N.W.2d 402 (Rebecca Grassl Bradley, J., dissenting), summarily rev'd sub. nom., Wis. Legislature v. Wis. Elections Comm'n, 595 U.S. __, 142 S. Ct. 1245 (2022) (per curiam) ("The primary and most important factor to weigh in considering whether to overrule an earlier decision is its correctness."  (quoting Bryan A. Garner et al., The Law of Judicial Precedent 397 (2016))).

¶23 In dissent, then-Chief Justice Shirley Abrahamson explained Wis. Stat. § 706.10(3) has two clauses, "each complete by itself and capable of standing as a separate sentence." Borek, 328 Wis. 2d 613, ¶53 (Abrahamson, C.J., dissenting). Section 706.10(3), broken into those clauses, provides:

1. In conveyances of lands words of inheritance shall not be necessary to create or convey a fee, and

2. every conveyance shall pass all the estate or interest of the grantor unless a different intent shall appear expressly or by necessary implication in the terms of such conveyance.

"As written, the first clause of . . . § 706.10(3) provides that in conveyances of lands, words of inheritance (that is, words like 'heirs' and 'assigns') are not necessary to create or convey a fee."  Borek, 328 Wis. 2d 613, ¶55.  "The second clause . . . provides that every conveyance shall pass all of the estate or interest of the grantor unless a different

9

implication appears expressly or by necessary implication in the terms of such conveyance." Id., ¶56. Legislative history (discussed in more detail in the next section), confirms the independence of these clauses. Id., ¶¶74-80.

¶24 The first clause has two key phrases: (1) "conveyances of land"; and (2) "create or convey a fee." The clause does not apply to every document that could be deemed a "conveyance of land" but "only to a subset of conveyances . . . that 'create or convey a fee.'" Id., ¶60. While an easement could be a conveyance of land,[5] it certainly is not a fee. See id., ¶57. "[I]t is abundantly clear that the granting of easement does not convey title to the land to an easement holder but only a right or privilege." Id., ¶58 (citing Polebitski, 157 Wis. at 381); see also Berger v. Town of New Denmark, 2012 WI App 26, ¶¶12-14, 339 Wis. 2d 336, 810 N.W.2d 833 (noting the common law distinction between a fee and an easement). Chief Justice Abrahamson correctly concluded, "[t]he conveyance of the easement for water flowage and the conveyance of sand removal rights in the instant case are not conveyances of land creating a fee within the scope of the first clause of Wis. Stat. § 706.10(3)." Borek, 328 Wis. 2d 613, ¶60.

---

[5] Neither the majority nor the dissent in Borek noted that "land" is a statutorily-defined term. Wisconsin Stat. § 990.01(18) notes: "'Land' includes lands, tenements and hereditaments and all rights thereto and interests therein." Given this definition, a deed granting an easement could be a conveyance of land because the deed creates a "right[]" or "interest[]" in land. Regardless, the deed would not create or convey a fee.

¶25 The second clause applies more broadly to "every conveyance." Wis. Stat. § 706.10(3). Notably, an easement is not an "estate[.]" Borek, 328 Wis. 2d 613, ¶66. "This court has repeatedly affirmed that an easement 'does not create an estate in land,' but rather 'a right to use the land of another for a special purpose not inconsistent with the general property in the owner.'" Id., ¶58 (quoting Hunter v. McDonald, 78 Wis. 2d 338, 344, 254 N.W.2d 282 (1977)). "[A] right or privilege is not an estate. The grantor of an easement is not passing an estate." Id., ¶66. A grantor, however, may convey an "interest" in an easement. Id., ¶67. Therefore:

> [I]f an easement holder conveys the easement, the entire interest the grantor holds in the easement is transferred, unless there is a different expressed intent or necessary implication. If, however, the holder of the easement owns less than a full interest——let us say she owns a one-half interest in the dominant estate and thus a one-half interest in the easement——she then conveys all of her one-half interest unless a different intent shall appear expressly or by necessary implication.

Id. While the second clause applies to easements, it was no more relevant in Borek than the first. The focus of the case was on the type of interest (personal or transferrable) initially created, not whether the interest had been subsequently transferred in full. Id., ¶78.

¶26 Because the first clause does not apply, it does not foreclose the Cobbs' argument that the lack of words of inheritance in the deed indicates King's predecessors received a personal, non-transferrable easement. The second clause is not particularly relevant either because if King's predecessors did

11

not receive a transferrable right, no reason exists to even consider whether the Hessils' conveyance of the dominant estate to King also transferred their easement. As the Cobbs put it, "Wis. Stat. § 706.10(3) fails to apply because its second clause confirmed only what King received, not what the Hessils (his grantors) acquired." Instead of recognizing the independent nature of the first and second clause, the Borek majority melded the clauses together.

¶27 "The [Borek] majority bypasse[d] the precise language and structure of Wis. Stat. § 706.10(3) and breezily paraphrase[d] the two clauses[.]" Id., ¶68. The majority is difficult to follow, but as Chief Justice Abrahamson summarized:

> The majority's construction seems to use words of the first clause addressing words of inheritance to modify the second clause. At the same time the majority takes the words "unless a different intent shall appear," which appears only in the second clause, and construes them to modify the first clause.

Id., ¶71. Stated differently:

> [T]he majority mixes and matches words from the two clauses of Wis. Stat. § 706.10(3) to conclude (1) that words of inheritance shall not be necessary in any conveyance of lands, of an estate, or of an interest in land; (2) that every conveyance of an interest in land automatically implies words of inheritance (that is, that every conveyance of an interest in land includes the right of the grantee to transfer the same interest in the future); and (3) that a different intent, such as the intent that the conveyed interest in land be nontransferable, must appear expressly or by necessary implication in the terms of the conveyance.

Id., ¶70. At other points, the majority also seemed to read words into the statute. Id., ¶69 ("The majority substitutes 'full title' for the words 'estate' and 'interest.' The

12

majority does not explain why the words 'estate' and 'interest' can be transformed into the words 'full title' and does not explain the significance of the words 'full title.'"). "This interpretation contravenes the plain text of the statute." Id., ¶71.

¶28 The Borek majority "usurped the legislative function" when it chose to "rewrit[e] the statute." St. Augustine Sch. v. Taylor, 2021 WI 70, ¶125, 398 Wis. 2d 92, 961 N.W.2d 635 (Rebecca Grassl Bradley, J., dissenting). Having misconstrued the statute, this court should not sidestep its duty to restore its meaning. Id. ("The majority's refusal to correct Vanko's irrefutably erroneous interpretation of the law 'does not comport with our duty [to exercise our constitutionally-vested 'judicial power'] because it elevates demonstrably erroneous decisions——meaning decisions outside the realm of permissible interpretation——over the text of . . . duly enacted . . . law." (quoting Gamble v. United States, 587 U.S. __, 139 S.Ct. 1960, 1981 (2019) (Thomas J., concurring)) (modifications in the original)).

Error 2: Misapplying the Borrowed-Statute Doctrine

¶29 The majority in Borek started its statutory analysis by giving undue weight to pseudo-legislative history disguised as statutory history.[6] The majority noted a predecessor statute

---

[6] Statutory history is a part of a proper "plain meaning analysis"; legislative history is not. See generally Brey v. State Farm Mutual Automobile Ins. Co., 2022 WI 7, ¶¶20-21, 400 Wis. 2d 417, 970 N.W.2d 1 (explaining "[s]tatutory history, which involves comparing the statute with its prior versions, 'may . . . be used as part of a "plain meaning analysis"'" while "legislative history," which is primarily "the byproduct of

to Wis. Stat. § 706.10(3) was partly based on a New York statute enacted in 1835. Borek, 328 Wis. 2d 613, ¶19 (majority op.) (quoting 1 N.Y. Rev. Stat. pt. 2, ch. 1, tit. 5, § 1 (1835)). It came to this conclusion based on an annotation in an 1889 codification of the Wisconsin statutes, which stated the predecessor statute had been composed partly "with additions of words from the New York statute to give it full effect." Id., ¶18 (quoting the annotation).

¶30 Chief Justice Abrahamson's dissent provides a more detailed historical analysis. As she explained, in 1874 the Wisconsin legislature adopted "the near-verbatim equivalent of the first clause of the present [Wis. Stat.] § 706.10(3)." Id., ¶74 (Abrahamson, C.J., dissenting). "In 1878, the legislature then amended the statute. It added additional language that would become the forerunner of the second clause of the present version of § 706.10(3). The legislative history thus confirms that § 706.10(3) is composed of two distinct clauses with distinct origins and independent operation." Id., ¶75.

¶31 Well after 1878, New York's intermediate appellate court purportedly held "an easement" is "an estate in fee" under the New York statute.[7] Id., ¶19 (majority op.) (quoting Whitney

legislation" does not evidence plain meaning (quoted sources omitted)); Wis. Judicial Comm'n v. Woldt, 2021 WI 73, ¶81, 398 Wis. 2d 482, 961 N.W.2d 854 (Rebecca Grassl Bradley, J., concurring/dissenting) (distinguishing statutory history from legislative history).

[7] The Borek majority, or at least some of its members, may have been operating under a common, yet faulty, assumption. New York's high court is called the "New York Court of Appeals." Its lower court is called the "New York Supreme Court," which consists of a trial division and an appellate division.

14

v. Richardson, 13 N.Y.S. 861, 862 (N.Y. Gen. Term 1891)). Oddly, this New York case, Whitney, takes center stage in Borek's analysis.

¶32 The majority appears to have relied on a corrupted version of the "Borrowed-Statute Doctrine." See Garner et al., The Law of Judicial Precedent, at 716. According to a leading treatise, this doctrine holds:

> When one state enacts another state's statutory language that has a settled judicial interpretation, it is sometimes presumed that the settled interpretation is adopted with the statute. But this overstates the matter: properly viewed, the decision of the source state's high court on a point concerning the statute are merely persuasive precedents and are not binding on the courts of the borrowing state.

---

The majority noted the decision was from "the Supreme Court of New York," suggesting it wanted to highlight the prestige of that institution to increase the persuasiveness of its reasoning. Borek Cranberry Marsh, Inc. v. Jackson Cnty., 2010 WI 95, ¶19, 328 Wis. 2d 613, 785 N.W.2d 615 (citing Whitney v. Richardson, 13 N.Y.S. 861, 862 (N.Y. Gen. Term 1891)). Compare Bryan A. Garner et al., The Law of Judicial Precedent 243 (2016) ("A court's rank and standing are important in considering a precedent's weight. Great deference is paid to those courts possessing an acknowledged reputation for learning and ability or a special and intimate familiarly with the branch of the law to which the decision in question relates.") and id. at 655 ("Whether construing a state's constitution, statutes, or regulations, or for that matter developing common law, the state high court has the final say——and thus final authority——over the interpretation of its own state's laws."), with id. at 253 ("Opinions of trial and other inferior courts generally rank low on the scale of authority but may be followed by higher courts or courts of another jurisdiction when no precedent exists or for other special reasons."). This notation, however, only serves to weaken the majority's reasoning——to place such weight on a decision from another state's intermediate appellate court is unusual.

15

Id.  This doctrine derives from the (questionable) presumption that when a state's legislature adopts a statute based on language in another state's statute, it is aware of how that language has been interpreted and desires that interpretation to be applied in its state.  See id. at 717.  Multiple problems imbue the Borek majority's application of this doctrine.

¶33 First, the borrowed-statute doctrine does not apply unless the other state's interpretation was rendered before the statute was enacted.  Id. at 722 ("The doctrine should never apply to judicial interpretations of the source statute occurring after its adoption."  (emphasis added)); 2B Sutherland Statutory Construction § 52:2 (7th ed. updated Nov. 2021) ("When the state of origin interprets a statute after the adopting state statute has been enacted, courts do not presume the adopting state also adopted the subsequent construction.").  The reason why is clear:  a legislature does not have a crystal ball that tells it how some future court in another state will decide a case, so it obviously is not basing statutory language on that future decision.  See Garner et al., The Law of Judicial Precedent, at 722; see also Goodell v. Yezerski, 136 N.W. 451, 452 (Mich. 1912) (explaining the borrowed-statute doctrine had no application "because the statute under consideration did not receive judicial construction [in the source state] . . . until long after its adoption by this state").

¶34 Wisconsin Stat. § 706.10(3)'s predecessor was adopted in 1878 (according to the Borek majority), and Whitney, the New York Supreme Court decision on which it relies, was decided over

16

a decade later in 1891. Whitney, the Borek majority claimed, was based on a New York Court of Appeals decision, but even that decision was rendered in 1888——a full decade after the statutory enactment. Borek, 328 Wis. 2d 613, ¶19 (citing Whitney, 13 N.Y.S. at 862 (citing Nellis v. Munson, 15 N.E. 739, 741 (1888))). For this reason alone, the New York cases are no more persuasive than decisions from any other state——notwithstanding the Borek majority's fallacious claim that they deserve special weight because Wisconsin's statute was based on New York's. See id., ¶21; see also Goodell, 136 N.W. at 452 (rejecting an argument to apply the borrowed-statute doctrine and noting the opinion from the source state "should receive just that consideration as authority to which it would be entitled under ordinary circumstances"); Sutherland § 52:2 ("A subsequent construction in the state of origin is never more than 'persuasive,' and usually has no more weight than the interpretation of any similar statute from another jurisdiction.").

¶35 Second, Whitney is an intermediate appellate court decision. The borrowed-statute doctrine does not apply (or at least applies with much less force) to decisions of lower courts——regardless of when they were rendered. Garner et al., The Law of Judicial Precedent, at 722; see also Sutherland § 52:2 ("Decisions from intermediate courts in the state of origin, and from administrative tribunals, have less effect than those of the highest court, because states normally adopt only decisions from a court of last resort when they adopt a

17

statute."). Intermediate appellate courts decide an extraordinary number of cases, and whether a state legislature is aware of its own state intermediate appellate court's decisions is questionable——let alone those of another state. See Friends of Frame Park, __ Wis. 2d __, ¶¶57-68; see also Lewis v. State, 256 P. 1048, 1049-50 (Ariz. 1927) ("It is the general rule that when we take a statute from a sister state we take it with the interpretation previously placed upon it by the court of last resort of that state. This, however, is not an absolute rule, and if we think the construction so given is not consonant with common sense, reason, and our public policy, we are not absolutely bound to accept it. Still less are we bound when the decision is one of an intermediate appellate court, and rendered after we have adopted the statute." (internal citation omitted)); Given v. Owen, 175 P. 345, 346 (Okla. 1918) ("The decision was handed down July 8, 1898, long after the adoption of the Kansas Code of Procedure by the territory of Oklahoma; for which reason, and the additional reason that the court rendering the opinion was not a court of last resort in the state of Kansas, this court will not hold itself bound by the construction promulgated.").

¶36 Third, the Borek majority misread Whitney and Nellis. Whitney did not interpret the New York statute. Borek, 328 Wis. 2d 613, ¶77 (Abrahamson, C.J., dissenting). In fact, it said very little on the topic at all. While the Borek majority leaves the impression Whitney thoroughly analyzed this issue,

18

the entire discussion of the statute is little more than a quote of the statutory text followed by a conclusory statement:

> 1 Rev. St. 748, § 1, is as follows: "The term 'heirs' or other words of inheritance shall not be requisite to create or convey an estate in fee, and every grant or devise of real estate, or any interest therein, hereafter to be executed, shall pass all the estate or interest of the grantor or testator, unless an intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of such grant." In Nellis v. Munson, 108 N. Y. 453, 15 N. E. Rep. 739, it was adjudged that an easement to carry water across the lands of another, for the benefit of the dominant estate, is an interest in fee or of the freehold, within the meaning of the statute. In that case the instrument was not acknowledged or recorded. It was therefore held to be void as against the purchaser. In the case at bar the instrument was both acknowledged and recorded. The omission of the words "heirs or assigns" did not limit the extent of the grant. Nicoll v. Railroad Co., 12 N. Y. 121; Cole v. Lake Co., 54 N. H. 242, 243-278; Kirk v. Richardson, 32 Hun, 434, 435.

Whitney, 13 N.Y.S. at 862-63. The word "easement" appears exactly once in the entire opinion, in a passing reference to another case. This passage is far from "sound reasoning" worthy of deference. Garner et al., The Law of Judicial Precedent, at 164; see also Friends of Frame Park, __ Wis. 2d __, ¶66 (explaining a case's persuasiveness stems from "the decisive nature of the conclusions announced, and the deliberation and care with which they have been investigated" (quoting John Cleland Wells, A Treatise on the Doctrine of Res Adjudicata and Stare Decisis 535 (1878))).

¶37 Nellis is no more on point. As Chief Justice Abrahamson noted in dissent, that case did not interpret the New York statute on which the Wisconsin statute was partly based.

19

_Borek_, 328 Wis. 2d 613, ¶79. _Nellis_ interpreted another statute, on a related subject matter, which stated:

> Every grant in fee or of a freeehold estate shall be subscribed and sealed by the person from whom the estate or interest conveyed is intended to pass, or his lawful agent. If not duly acknowledged previous to its delivery, . . . its execution and delivery shall be attested by at least one witness; or, if not so attested, it shall not take effect, as against a purchaser or incumbrancer, until so acknowledged.

3 N.Y. Rev. Stat. § 137 (as quoted in _Nellis_, 15 N.E. at 740). An interpretation of a different statute, notwithstanding its similar subject matter, does not trigger the borrowed-statute doctrine. See Garner et al., _The Law of Judicial Precedent_, at 718 ("For the doctrine to have _any_ persuasive force, the statute in the adopting state must be _precisely_ the same as the one in the source state." (emphasis added)).

¶38 On a similar note, the _Borek_ majority acknowledged Wis. Stat. § 706.10(3) was revised and renumbered in 1969, but declared the changes "appear[ed]" to be merely "stylistic" edits. _Borek_, 328 Wis. 2d 613, ¶20 (majority op.). The 1969 law revised the statute as follows:

> In conveyances of lands~~,~~ words of inheritance shall not be necessary to create or convey a fee, and every conveyance ~~grant of lands or any interest therein~~ shall pass all the estate or interest of the grantor, unless a different ~~the~~ intent ~~to pass a less estate or interest~~ shall appear expressly ~~by express terms~~ or by ~~be~~ necessary implication ~~necessarily implied~~ in the terms of such conveyance ~~grant~~.

Created by _comparing_ 1969 Wis. Act 285, § 28, _with_ Wis. Stat. § 2206 (1878) (as quoted in _Borek_, 328 Wis. 2d 613, ¶18). These changes are substantive, not merely stylistic. Regardless, the

20

text of the statute the court interpreted in Borek was substantially different from the text of the statute purportedly interpreted by the New York courts, as even a "cursory" comparison of the two reveals.  See Borek, 328 Wis. 2d 613, ¶22 (acknowledging a "cursory reading § 706.10(3) might suggest that its provisions do not govern easements").

| Wis. Stat. § 706.10(3) | 1 N.Y. Rev. St. 748, § 1 (as quoted in Whitney) |
|---|---|
| In conveyances of lands words of inheritance shall not be necessary to create or convey a fee, and every conveyance shall pass all the estate or interest of the grantor unless a different intent shall appear expressly or by necessary implication in the terms of such conveyance. | The term 'heirs' or other words of inheritance shall not be requisite to create or convey an estate in fee, and every grant or devise of real estate, or any interest therein, hereafter to be executed, shall pass all the estate or interest of the grantor or testator, unless an intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of such grant. |

### Error 3:  Giving Too Much Weight to the Borrowed-Statute Doctrine

¶39 The Borek majority failed to recognize the limited reach of the borrowed-statute doctrine.  Justice Antonin Scalia and Bryan A. Garner have called the canon "dubious[.]"  See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 325-26 (2012).  They asked rhetorically, "[h]ow is the competent lawyer (or the court, for that matter) to know that a statute has been 'copied' from that of another state?"  Id. at 326.  As they explain, resort to legislative history is often inappropriate.  Id.

21

¶40 Whether the borrowed-statute doctrine can even be considered an intrinsic source of statutory meaning, as the Borek majority seemed to treat it,[8] is doubtful. Indeed, at least one list of canons catalogs the doctrine under "extrinsic source canons." See William N. Eskridge, Jr. & Philip P. Frickey, Foreword, Law as Equilibrium, 108 Harv. L. Rev. 26, 100 (1994). The doctrine exists as a particular application of legislative history, which may occasionally be useful to resolve an ambiguity. See Garner et al., The Law of Judicial Precedent, at 717-18 ("[T]he borrowed-statute doctrine is actually a tenuous canon of construction that typically requires an extensive use of legislative history (which is hardly a recommendation for it in the eyes of traditionalists). Although some will consider the doctrine helpful as an occasional aid in statutory construction, it should never bind the courts when other interpretative tools indicate a better interpretation. The U.S. Supreme Court has viewed the principle this way[.]").

---

[8] The Borek majority reasoned, "if there were any doubt [about the meaning of Wis. Stat. § 706.10(3)], courts in other states with similar statutes, including the New York statute upon which ours was based, have construed this language to apply to easements as well as conveyances of land." 328 Wis. 2d 613, ¶21. This statement indicates the court merely used the New York decisions to confirm § 706.10(3)'s plain meaning; however, the opinion read as a whole negates this possibility. The opinion does not lead with a textual analysis; it dives right into legislative history to establish the Wisconsin Legislature considered the New York statute (although it did not adopt the statute verbatim), then it discusses the New York cases, and only then does it try to provide a rationale grounded in the text of the statute. Id., ¶¶17-22.

22

¶41 Additionally, overreliance on the borrowed-statute doctrine is inconsistent with this court's general hesitancy toward comparative law. Even if two states have similar statutes, they may have vastly different methods of statutory interpretation. "The hard truth of the matter is that American courts have no intelligible, generally accepted, and consistently applied theory of statutory interpretation." Henry M. Hart & Albert M. Sacks, The Legal Process 1169 (William N. Eskridge, Jr. & Philip P. Frickey eds., 1994). While Wisconsin courts have long employed textualism, not every state does. See generally Daniel R. Suhr, Interpreting Wisconsin Statutes, 100 Marq. L. Rev. 969 (2017) (explaining the general consensus among Wisconsin judges to employ textualism is a notable accomplishment). "This court has no apprehension about being a solitary beacon in the law if our position is based on a sound application of this state's jurisprudence."[9] Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶100, 264 Wis. 2d 60, 665 N.W.2d 257.

¶42 The Borek majority never declared Wis. Stat. § 706.10(3) ambiguous, so resort to extrinsic sources as the

---

[9] The Borek majority stated in conclusory fashion that "[o]ther states with nearly identical language have similarly interpreted their statutes to include easements as well as conveyances of land." 328 Wis. 2d 613, ¶19 n.9 (citing two cases from the Iowa Supreme Court and one from the Missouri Court of Appeals). Three cases from two states falls far short of a thorough survey. Regardless, these cases are not on point. Id., ¶79 n.15 (Abrahamson, C.J., dissenting) ("The majority's reference to case law from other jurisdictions is inapposite. The statutes are not the same as Wis. Stat. § 706.10(3). The cases revolve around the words 'heirs' or 'assigns.'").

23

basis for interpreting the statute is impermissible. The opinion seems to search for ambiguity, but none exists. See Lamar Cent. Outdoors, LLC v. Div. of Hearings & Appeals, 2019 WI 109, ¶18, 389 Wis. 2d 486, 936 N.W.2d 573 ("[S]tatutory interpretation involves the ascertainment of meaning, not a search for ambiguity." (quoted source omitted)).

### Error 4: Guessing Legislative "Intent"

¶43 Much of the Borek opinion either implicitly or explicitly seeks to determine legislative intent. Its emphasis on the borrowed-statute doctrine is but one example. As one court recognized, "the purpose of the borrowed-statute doctrine is to predict what the Legislature intended when it enacted a substantive law." Antilles Sch., Inc. v. Lembach, 64 V.I. 400, 420 (2016) (cited source omitted).

¶44 The majority concluded the 1969 changes "appear[ed]" stylistic because it was "unable to find any evidence, textual or extra-textual, that these revisions reflected a legislative intent to change the meaning of the statute." Borek, 328 Wis. 2d 613, ¶20 (emphasis added). This court has long disavowed reliance on so-called "legislative intent," the search for which leads to pure judicial activism. See, e.g., Townsend v. ChartSwap, LLC, 2021 WI 86, ¶24, 399 Wis. 2d 599, 967 N.W.2d 21 (noting the court of appeals erred by relying on "its perception of legislative intent when construing a statute" instead of focusing on the words "the legislature actually enacted into law" (quoting State v. Fitzgerald, 2019 WI 69, ¶30, 387 Wis. 2d 384, 929 N.W.2d 165)).

24

¶45 The very idea that legislative intent is even possible to determine is a legal fiction:

> The notion that you can pluck statements from a couple of legislators or even from a committee report, which is usually written by some teenagers, and . . . very often not even read by the committee, much less read by the whole House, much less less read by the other House, . . . [and presume the statements] somehow [are] reflective of the intent of the whole Congress and of the President . . . it truly is the last surviving fiction in American law.

Clean Wis., Inc. v. Wis. Dep't of Natural Res., 2021 W I71, ¶90, 398 Wis. 2d 386, 961 N.W.2d 346 (Rebecca Grassl Bradley, J., dissenting) (quoting Hoover Inst., Uncommon Knowledge with Justice Antonin Scalia, YouTube, at 17:40 (Oct. 30, 2012), https://www.youtube.com/watch?v=DaoLMW5AF4Y (modifications in the original)); see also Hinrichs v. DOW Chemical Co., 2020 WI 2, ¶103, 389 Wis. 2d 669, 937 N.W.2d 37 (Rebecca Grassl Bradley, J., concurring/dissenting) (calling "legislative intent" a fiction).

¶46 Even if courts could somehow divine legislative intent, the Borek majority's claim that courts could determine it based on a lack of "extra-textual" evidence is extraordinary, particularly given the scant state of most Wisconsin legislative drafting files from the mid-twentieth century (and which do not exist at all for laws passed in the nineteenth century).[10] The

---

[10] Legislative history research, particularly for older laws in Wisconsin, is a notoriously difficult exercise. See Michael J. Keane & Kristina Martinez, Researching Legislative History in Wisconsin, Wisconsin Briefs from the Legislative Reference Bureau, updated Nov. 2014, 1, http://lrbdigital.legis.wisconsin.gov/digital/collection/p16831coll2/id/1238/rec/1 ("Researching the legislative history of a Wisconsin statute involves several practical obstacles. The

*Borek* majority never cited anything from the 1969 drafting file indicating the changes were stylistic; notably, its conclusory statement was prefaced with the word "appear": "the changes *appear* merely stylistic." *Borek*, 328 Wis. 2d 613, ¶20 (emphasis added).

¶47 The majority also ignored one particularly important intrinsic source, which the dissent mentioned. Wisconsin Stat. § 706.001(3) provided then (and provides now), "[t]his chapter shall be liberally construed, in cases of conflict or ambiguity, so as to effectuate the intentions of parties who have acted in good faith." The *Borek* majority "violate[d] this specific rule of construction by defeating the intent of the parties as manifest in the terms of the document itself." *Borek*, 328 Wis. 2d 613, ¶73 (Abrahamson, C.J., dissenting).

---

legislative process in Wisconsin, as in many states, is not geared toward documenting legislative intent. Many of the resources commonly associated with legislative intent research with respect to the United States Congress have no counterpart in the Wisconsin Legislature. There is no verbatim record of floor speeches. There are no formal reports of standing committees indicating the reasons why legislation should be enacted. There is no transcript of committee proceedings. Without those resources, documentation of legislative intent must rely on other resources which are not necessarily relevant to intent, are often not useful, and usually must be interpreted in order to be helpful to the researcher at all."); see also Glendon M. Fisher, Jr. & William J. Harbison, Trends in the Use of Extrinsic Aids in Statutory Interpretation, 3 Vand. L. Rev. 586, 591 (1950) ("In contrast with the situation in the Federal Government is that to be found in the average state, where almost no legislatively-created extrinsic aids are available to assist the courts in interpreting statutes.").

### B. Stare Decisis Is Not Absolute

¶48 Reflexively cloaking every judicial opinion with the adornment of stare decisis threatens the rule of law, particularly when applied to interpretations wholly unsupported by the statute's text.

Manitowoc Cnty. v. Lanning, 2018 WI 6, ¶81 n.5, 379 Wis. 2d 189, 906 N.W.2d 130 (Rebecca Grassl Bradley, J., concurring). "[S]tare decisis is a judicially-created policy and 'not an inexorable command;' for this reason, we will overturn precedent if it is objectively wrong." Friends of Frame Park, __ Wis. 2d __, ¶64 (quoting Johnson Controls, 264 Wis. 2d 60, ¶97). The majority in this case allows an erroneous interpretation of a statute to prevail over the statute's actual text; however, "[w]e cannot mistake 'the law' for 'the opinion of the judge' because 'the judge may mistake the law.'" Johnson, 400 Wis. 2d 626, ¶259 (quoting Introduction, William Blackstone, Commentaries *71). "[W]e do more damage to the rule of law by obstinately refusing to admit errors, thereby perpetuating injustice, than by overturning an erroneous decision." Friends of Frame Park, __ Wis. 2d __, ¶65 (quoting State v. Roberson, 2019 WI 102, ¶49, 389 Wis. 2d 813, 935 N.W.2d 813).

¶49 Borek's analysis is "unsound in principle" because it employed an approach to statutory interpretation inconsistent with the textual approach reaffirmed in Kalal. Id., ¶95 (citing Kalal, 271 Wis. 2d 633). "Kalal was a 'watershed decision in the modern history of the Wisconsin Supreme Court' and is Wisconsin's 'most cited case of modern times.'" Clean Wis., Inc., 398 Wis. 2d 386, ¶86 (quoting Suhr, Interpreting Wisconsin Statutes, at 969-70). By one scholar's count, as of 2017, "the

27

case ha[d] already been cited in over 800 subsequent published decisions of Wisconsin's appellate courts[.]" Suhr, Interpreting Wisconsin Statutes, 969. Strikingly, Borek contains not a single reference to Kalal.

¶50 Borek is an outlier. Even if Borek reached the correct outcome, its analysis demands reconsideration and correction. Allowing Borek to stand embeds this court's error in the law. See Thomas Hobbes, Leviathan 192 (Richard Tuck ed., Cambridge Univ. Press 1991) (1651) ("No man's error becomes his own Law; nor obliges him to persist in it. Neither (for the same reason) becomes it a Law to other Judges.").

¶51 While property owners who have structured their decisions around Borek have a reliance interest, Wisconsin's interest in correct interpretations of the law is paramount in preserving the rule of law. The deed in this case pre-dates Borek, as do all conveyances, so neither party can claim a reliance interest. As for other deeds that post-date Borek, this court could apply its holding prospectively.

C. The Majority's Erroneous Exercise of Discretion

¶52 This case presents a compelling issue, worthy of this court's reconsideration. No other court in the state can address the problem this court created. "Dismissing a case as improvidently granted is thankfully an uncommon occurrence in this court." Fond Du Lac Cnty. v. S.N.W., 2021 WI 41, ¶2, 396 Wis. 2d 773, 958 N.W.2d 520 (mem) (Ann Walsh Bradley, J., dissenting from the opinion dismissing the petition for review as improvidently granted). To grant a petition is to recognize

28

a case as important and parties "expend[] substantial effort and resources" to inform our decisionmaking. Id., ¶3.

¶53 The majority's decision to declare this case improvidently granted is peculiar. The majority must believe one of two faulty premises: (1) Borek is clearly correct; or (2) even if Borek is questionable, stare decisis necessitates adherence to it. Borek is clearly incorrect. Its faulty reasoning produced a misinterpretation of law. No principle forming the doctrine of stare decisis compels upholding Borek.

IV. CONCLUSION

¶54 Stare decisis does not create rigid rules that cement faulty interpretations of law. Consistency for consistency's sake unavoidably perpetuates injustice. The majority in this case fails to recognize the limited role of stare decisis, leaving the impression that once an issue has been decided, the decision may never be reexamined.

> ¶55 In the matter of reforming things, as distinct from deforming them, there is one plain and simple principle; a principle which will probably be called a paradox. There exists in such a case a certain institution or law; let us say, for the sake of simplicity, a fence or gate erected across a road. The more modern type of reformer goes [happily] up to it and says, "I don't see the use of this; let us clear it away." To which the more intelligent type of reformer will do well to answer: "If you don't see the use of it, I certainly won't let you clear it away. Go away and think. Then, when you can come back and tell me that you do see the use of it, I may allow you to destroy it."

G.K. Chesterton, The Thing: Why I am Catholic 27 (Dodd, Mead and Co., Inc. 1930). Properly understood, stare decisis should be applied as Chesterton's more intelligent type of reformer

29

would have it. Bartlett v. Evers, 2020 WI 68, ¶203-04, 393 Wis. 2d 172, 945 N.W.2d 685 (Kelly, J., concurring/dissenting). Making this analogy, Justice Daniel Kelly explained the purpose of stare decisis: "To remind us that those who came before were diligent and capable in their work, and that in doubtful matters it is best to leave settled things settled unless there is a clear and present need to do otherwise." Id., ¶203. An ill-reasoned court opinion should not be "a permanent fence[.]" Id., ¶204. When an answer can be given to Chesterton's more intelligent type of reformer, that is, when a later court can identify precisely how an earlier court went wrong, the fence may come down.

¶56 The Borek majority erected a fence where one did not belong. In this case, the majority reinforces that fence, without so much as an explanation. I respectfully dissent.

30

¶57 BRIAN HAGEDORN, J. *(dissenting).* I dissent because I would address the questions presented rather than dismissing the case as improvidently granted.