# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP2383-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Daimon Von Jackson, Jr., |
| | Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 400 Wis. 2d 542, 970 N.W.2d 571
(2022 – unpublished)

| | |
|---|---|
| OPINION FILED: | May 12, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 29, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Racine |
| JUDGE: | Mark F. Nielsen & Faye M. Flancher |

JUSTICES:
Per curiam. REBECCA GRASSL BRADLEY, J., filed a concurring opinion, in which ZIEGLER, C.J., joined and in which HAGEDORN, J., joined except for ¶3. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which DALLET, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Melinda A. Swartz* and the *Law Office of Melinda Swartz, LLC,* Milwaukee. There was an oral argument by *Melinda A. Swartz.*

For the plaintiff-respondent, there was a brief filed by *Lisa E.F. Kumfer,* assistant attorney general, with whom on the brief was *Joshua L. Kaul,* attorney general. There was an oral argument by *Lisa E.F. Kumfer,* assistant attorney general.

2023 WI 37

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP2383-CR
(L.C. No. 2014CF1721)

STATE OF WISCONSIN      :      IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**Daimon Von Jackson, Jr.,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**MAY 12, 2023**

Sheila T. Reiff
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Dismissed as improvidently granted.*

¶1 PER CURIAM. Daimon Von Jackson, Jr. petitioned for review of a court of appeals decision that affirmed a circuit court order denying his postconviction motion, in which he argued, among other things, that his trial counsel was ineffective. State v. Jackson, No. 2019AP2383-CR, unpublished slip op. (Wis. Ct. App. Dec. 29, 2021). After reviewing the record and the briefs, and after hearing oral arguments, we conclude that this matter should be dismissed as improvidently granted.

*By the Court*.——The review of the decision of the court of appeals is dismissed as improvidently granted.

¶2 REBECCA GRASSL BRADLEY, J. *(concurring).* I agree with this court's decision to dismiss the petition for review as improvidently granted. I write in concurrence only to respond to the dissent, which insinuates that by dismissing the petition, this court maintains a miscarriage of justice. Not so. The dissent also inaccurately portrays this court's recent history regarding dismissed petitions.

¶3 Lobbing an alarming accusation, the dissent declares: "[w]ithout a decision in this case, we leave a conviction intact without examining the circumstances that led to what a [dissenting] judge of the court of appeals referred to as a failure of both the court and the entire justice system." Dissent, ¶24 (citing State v. Jackson, No. 2019AP2383-CR, unpublished slip op., ¶88 (Reilly, J., dissenting)). This statement underrates the work of the three-judge panel that heard the appeal. After a thorough review, two of those three judges voted to affirm the decision made by the circuit court judge. As noted in the majority opinion, the dissenting judge largely raised issues neither presented to the circuit court nor argued on appeal. Jackson, No. 2019AP2383-CR, ¶50 n.23 (majority op.). The majority criticized the dissenting judge's "advocacy," reiterating the uncontroversial axiom that the court of appeals is not a defense attorney. Id. Damion Von Jackson's right to an appeal was fully satisfied when the court of appeals addressed the arguments he actually made. Just because a single judge at one point in this case's procedural history "perceived"

1

a "failure" of the justice system does not entitle Jackson to further review. See dissent, ¶24.

¶4 The dissent also makes the unsupported assertion that "[a]n examination of recent dismissals as improvidently granted reveals a largely inconsistent practice with regard to whether this court provides any explanation for its dismissals." Id., ¶15. The dissent's own examples illustrate its error. The dissent states:

> For examples of dismissals without explanation, see Slamka[ v. Gen. Heating and Air Conditioning Inc., 2022 WI 68], 404 Wis. 2d 586[, 980 N.W.2d 957]; Cobb v. King, 2022 WI 59, 403 Wis. 2d 198, 976 N.W.2d 410; Fond du Lac County v. S.N.W., 2021 WI 41, 396 Wis. 2d 773, 958 N.W.2d 530; State v. Kloss, 2020 WI 26, 390 Wis. 2d 685, 939 N.W.2d 564; Waukesha County v. J.J.H., 2020 WI 22, 390 Wis. 2d 531, 939 N.W.2d 49; Halbman v. Barrock, 2017 WI 91, 378 Wis. 2d 17, 902 N.W.2d 248.

> In contrast, for examples of explanations provided by the court for a dismissal as improvidently granted, see Smith v. Anderson, 2017 WI 43, 374 Wis. 2d 715, 893 N.W.2d 790; Michael J. Waldvogel Trucking, LLC v. LIRC, 2012 WI 28, 339 Wis. 2d 248, 810 N.W.2d 811; Nedvidek v. Kuipers, 2009 WI 44, 317 Wis. 2d 340, 766 N.W.2d 205; State v. Welda, 2009 WI 35, 317 Wis. 2d 87, 765 N.W.2d 555; State v. Gajewski, 2009 WI 22, 316 Wis. 2d 1, 762 N.W.2d 104; State v. Townsend, 2007 WI 31, 299 Wis. 2d 672, 728 N.W.2d 342.

Id., ¶15 n.2. The year in each citation is telling. The dissent cites five cases from the most recent five years in which no explanation was offered. The dissent's sampling does not include a sixth case in which this court did the same during this period. See State v. Lee, 2022 WI 32, ¶1, 401 Wis. 2d 593, 973 N.W.2d 764 (per curiam). In contrast, the dissent cites a single case from the past decade containing an explanation.

2

Notably, two justices did not participate in that case, which may explain why it is an outlier.[1] Smith, 374 Wis. 2d 715, ¶10. The remainder of the cases cited in which this court offered an explanation are from more than a decade ago, and one case is from 2007——about 16 years ago.

¶5 Far from establishing a "largely inconsistent practice," the dissent's thorough examination of these "recent" examples establishes a no-explanation trend. Dissent, ¶15. The dissent quibbles over the definition of "recent," characterizing my concept of what is recent as too limited. Id., ¶15 n.1. The irony, of course, is that this writing simply applies the very definition of "recent" the dissent uses. The dissent's "recent" examples show the opposite of the point the dissent is trying to make. The dissent may lament the no-explanation trend, but calling the court's practice "inconsistent" flies in the face of the facts.

¶6 This court's recent practice is in accord with the traditional approach. When courts of last resort dismiss a petition, they customarily do not explain why, although courts have at times exercised their discretion to make exceptions to this practice on a case by case basis. 5 Am. Jur. 2d Appellate Review § 347 (updated Feb. 2023) ("Ordinarily, no opinion

---

[1] As I have previously explained, "[c]itizens of the state deserve to have the entire supreme court decide all cases unless extreme circumstances require otherwise." Wis. Judicial Comm'n v. Woldt, 2021 WI 73, ¶56 n.2, 398 Wis. 2d 482, 961 N.W.2d 854 (Rebecca Grassl Bradley, J., concurring/dissenting) (quoting State v. Herrmann, 2015 WI 84, ¶154, 364 Wis. 2d 336, 867 N.W.2d 772 (Ziegler, J., concurring)).

accompanies the dismissal of a . . . [petition] as improvidently granted. However, the Court may issue an opinion per curiam defending the dismissal, especially where the Court wants to refute the arguments of some justices dissenting from the dismissal."); see also Rice v. Sioux City Mem'l Park Cemetery, 349 U.S. 70, 77 (1955) ("We have taken this opportunity to explain . . . [why the petition is being dismissed], when normally, for obvious reasons in view of our volume of business, no opinion accompanies dismissal of a writ as improvidently granted[.]"). The United States Supreme Court, for example, typically dismisses a petition in a mere one-sentence order. E.g., In re Grand Jury, 598 U.S. __, 143 S. Ct. 543 (2023) (per curiam). The dissent does not suggest this case warrants an exception to our practice; it argues explanations should accompany all dismissals.

¶7 In decrying our custom, the dissent examines its possible underlying rationales only in passing and only in response to the concerns raised in this writing. As the proponent of discarding a customary practice, the dissent bears the burden of examining why the practice exists and then explaining why it should be rejected:

> In the matter of reforming things, as distinct from deforming them, there is one plain and simple principle; a principle which will probably be called a paradox. There exists in such a case a certain institution or law; let us say, for the sake of simplicity, a fence or gate erected across a road. The more modern type of reformer goes gaily up to it and says, "I don't see the use of this; let us clear it away." To which the more intelligent type of reformer will do well to answer: "If you don't see the use of it, I certainly won't let you clear it

4

away. Go away and think. Then, when you can come back and tell me that you do see the use of it, I may allow you to destroy it."

G.K. Chesterton, The Thing: Why I am Catholic 27 (Dodd, Mead and Co. 1930); cf. Bartlett v. Evers, 2020 WI 68, ¶203, 393 Wis. 2d 172, 945 N.W.2d 685 (Kelly, J., concurring/dissenting) (explaining the purpose of precedent is "[t]o remind us that those who came before were diligent and capable in their work, and that in doubtful matters it is best to leave settled things settled unless there is a clear and present need to do otherwise").

¶8 Perhaps the tradition should be discarded; however, a cursory dissent in which "recent" history is misused to support a preconceived outcome is insufficient to justify that conclusion. The tradition may serve many purposes, including the preservation of limited judicial resources. See Rice, 349 U.S. at 77. For example, if this court determines the lower court reached the correct outcome, further review can be a waste of time. Lee, 401 Wis. 2d 593, ¶2 (Rebecca Grassl Bradley, J., concurring). Under that circumstance, this court may conclude further review would not only waste judicial resources but also cause an unwarranted delay in a case's final resolution. Additionally, the tradition may stem from the principle of judicial restraint. If this court declines to decide an issue, explaining the avoidance could inadvertently create persuasive authority on the issue, thereby nonsensically undermining the very decision not to decide it.

¶9 The dissent attempts to dispel these concerns by suggesting a single-sentence order dismissing the petition

5

because its resolution "will not lead to any further development of the law[.]" Dissent, ¶15 n.1 (quoting Slamka, 404 Wis. 2d 586, ¶5 (Ann Walsh Bradley, J., concurring)). The dissent claims this minimal explanation would neither consume judicial resources nor decide any issue but would foster transparency. This proposal presupposes a majority of this court in a particular case would agree on why a petition should be dismissed. Often, no such majority exists. If two or three justices dissent from the dismissal, forming a majority on rationale may be challenging. Some justices may disagree with the majority's reasoning, leading to separate writings, which in turn may prompt other justices to write separately in response. A broadly-worded order without a specific reason for dismissal facilitates joinder. The issue of judicial resources is more complicated than the dissent implies.

¶10 The dissent does not recognize that merely declaring a petition lacks law-developing potential is itself a holding with law-developing potential. Even if not binding, it hints this court would not distinguish or overrule an existing precedent. Perhaps such a dismissal should not be read that way, but this court's decisions are often misconstrued. Cf. Trump v. Evers, No. 2020AP1971-OA, unpublished order, 4 (Wis. Dec. 3, 2020) (Roggensack, C.J., dissenting) ("I also am concerned that the public will misunderstand what our denial of the petition means. Occasionally, members of the public seem to believe that a denial of . . . a case signals that the petition's allegations are either false or not serious. Nothing could be further from

6

the truth."); <u>O'Bright v. Lynch</u>, No. 2020AP1761-OA, unpublished order, 2 (Wis. Oct. 29, 2020) (Roggensack, C.J., concurring) ("I write separately to clarify that our denial of the petition for an original action should not be construed as an endorsement to disregard Wisconsinites' fundamental right to vote.").

¶11 Finally, it is unclear whether the dissent's proposal would actually give the public more than an order simply declaring the case dismissed. Without some explanation as to why the court's review of the case would not develop any law, the conclusory order recommended by the dissent would not promote transparency.[2]

¶12 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER joins this concurrence and that Justice BRIAN HAGEDORN joins this concurrence except for ¶3.

---

[2] The dissent also states, "[this court] dismisses a case that it at one point in time thought worthy of our review," castigating this court's supposed "about-face." Dissent, ¶15. The dissent does not acknowledge that a petition for review needs only three votes (less than a majority of the full court) to be granted. Wis. S. Ct. IOP III.B.1 (Feb. 28, 2023).

¶13 ANN WALSH BRADLEY, J. *(dissenting).* I write separately for two reasons. First, as I have stated previously, I believe that this court should explain to the litigants and the public the reason for a dismissal as improvidently granted. At the very least, the court should give the litigants a reasoned justification for leaving the questions unanswered given that they have expended substantial effort and resources to argue this case before us.

¶14 Second, in my view, the issues in this case are worthy of this court's review. Although the degree of law development is limited, Judge Reilly's dissent in the court of appeals raises substantial questions about whether Daimon Von Jackson received constitutionally adequate representation and even refers to this case as a "fail[ure]" of the "entire justice system." State v. Jackson, No. 2019AP2383-CR, unpublished slip op., ¶88 (Wis. Ct. App. Dec. 29, 2021) (Reilly, J., dissenting). Because I believe we should address the issues presented, I respectfully dissent.

I

¶15 The court disposes of this case as improvidently granted in a terse, two-sentence per curiam opinion. It dismisses a case that it at one point in time thought worthy of our review, offering no insight for either these litigants or future litigants as to the court's rationale for its about-face. An examination of recent dismissals as improvidently granted

1

reveals a largely inconsistent practice[1] with regard to whether this court provides any explanation for its dismissal.[2]

¶16 The result of this inconsistent practice is a lack of guidance for potential litigants and the public, as well as an

_____

[1] The concurrence asserts that there has been the emergence of a "no-explanation trend" over the past five years such that it should now be the accepted practice of the court. Concurrence, ¶5. Regardless of whether an examination of "recent" history encompasses a shorter or longer trajectory, the court five years ago (without explanation) stopped offering explanations. Such a change does not transform an alleged "custom" into an entrenched practice entitled to the patina of precedential weight. See id., ¶7.

Further, the rationales offered by the concurrence for adhering to this purported new "tradition" of offering no explanation are easily dispatched. The preservation of scarce judicial resources and the inadvertent resolution of an issue are certainly worthy of consideration. But a single sentence stating that a "review should be deemed improvidently granted because the issue for which we took this case will not lead to any further development of the law," as I have offered in the past, neither consumes a great deal of resources nor decides any issue in controversy. See Slamka v. Gen. Heating and Air Conditioning Inc., 2022 WI 68, ¶5, 404 Wis. 2d 586, 980 N.W.2d 957 (Ann Walsh Bradley, J., concurring).

[2] For examples of dismissals without explanation, see Slamka, 404 Wis. 2d 586; Cobb v. King, 2022 WI 59, 403 Wis. 2d 198, 976 N.W.2d 410; Fond du Lac County v. S.N.W., 2021 WI 41, 396 Wis. 2d 773, 958 N.W.2d 530; State v. Kloss, 2020 WI 26, 390 Wis. 2d 685, 939 N.W.2d 564; Waukesha County v. J.J.H., 2020 WI 22, 390 Wis. 2d 531, 939 N.W.2d 49; Halbman v. Barrock, 2017 WI 91, 378 Wis. 2d 17, 902 N.W.2d 248.

In contrast, for examples of explanations provided by the court for a dismissal as improvidently granted, see Smith v. Anderson, 2017 WI 43, 374 Wis. 2d 715, 893 N.W.2d 790; Michael J. Waldvogel Trucking, LLC v. LIRC, 2012 WI 28, 339 Wis. 2d 248, 810 N.W.2d 811; Nedvidek v. Kuipers, 2009 WI 44, 317 Wis. 2d 340, 766 N.W.2d 205; State v. Welda, 2009 WI 35, 317 Wis. 2d 87, 765 N.W.2d 555; State v. Gajewski, 2009 WI 22, 316 Wis. 2d 1, 762 N.W.2d 104; State v. Townsend, 2007 WI 31, 299 Wis. 2d 672, 728 N.W.2d 342.

effective negation of the numerous hours of work and sums of money spent seeking a decision on the merits. Because there is a strong public policy rationale behind providing reasons for a dismissal as improvidently granted, the court's general practice should be to provide an explanation for such a dismissal. Its "we don't have to tell you, so we won't" approach serves only to undermine transparency and accountability, while compounding the alleged systemic failures in this case.

II

¶17 I not only take issue with the majority's lack of explanation of its decision, but I also disagree with the decision itself. The issues raised in this case revolve around whether Jackson's fourth trial counsel, Attorney Scott Anderson, was constitutionally ineffective.[3] Jackson asserts that Attorney Anderson was ineffective for failing to communicate a plea offer to him, and for failing to meet with him as trial approached. Jackson also contends that the circuit court should have followed up to ensure that his attorney had met with him.

¶18 Jackson pleaded guilty to second-degree reckless homicide as a result of an incident where the victim was killed during a robbery. The plea was not as party to a crime (PTAC). See Wis. Stat. § 939.05 (2013-14).[4] This piece of information is

---

[3] See Strickland v. Washington, 466 U.S. 668, 687 (1984) (setting forth that a defendant must demonstrate both deficient performance and prejudice to be successful on a claim of ineffective assistance).

[4] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

3

important for two reasons. First, a previous plea offer, which the prosecutor said would remain open until the date of trial, included a plea as PTAC. Second, Jackson has maintained throughout the case that he was not the shooter, but was merely a lookout for the robbery that resulted in the shooting. Jackson argues that he would have been treated more favorably at sentencing if he pleaded as PTAC, which would have allowed him to credibly assert that he was the lookout rather than the shooter.

¶19 The record contains evidence supporting the claim that Jackson was the lookout. Most compelling is that an eyewitness described the clothes the two assailants were wearing. Surveillance video from a casino shows that later on the day of the homicide, Jackson and two other men were gambling. The two other men were wearing the clothes the eyewitness described, and Jackson was not. Further, a co-defendant's fingerprints were found on the gun magazine.

¶20 Attorney Anderson certainly made some mistakes, and although the State did not agree that Anderson's representation was constitutionally deficient, it conceded at oral argument that mistakes were made. This court apparently agreed with such an assessment when it imposed discipline on Anderson for violations of the rules of professional conduct in the course of his representation of Jackson. See Matter of Disciplinary Proceedings Against Anderson, 2020 WI 82, 394 Wis. 2d 190, 950 N.W.2d 191.

4

¶21 Although our precedent indicates that a violation of the rules of professional conduct does not necessarily mean that counsel was constitutionally ineffective, State v. Cooper, 2019 WI 73, ¶¶21-22, 387 Wis. 2d 439, 929 Wis. 2d 192, Judge Reilly's dissent in the court of appeals gives me enough pause to conclude that we should review the issues presented in this case. The sheer number and magnitude of the alleged errors contribute to a lack of confidence in the outcome that should be addressed by this court.

¶22 For example, Judge Reilly concluded that Jackson was "coerced into becoming the 'shooter'" due to constitutionally ineffective representation, the State's breach of a pretrial offer for Jackson to plead as PTAC, and the circuit court's defective plea colloquy. Jackson, No. 2019AP2383-CR, at ¶62 (Reilly, J., dissenting). The mistakes Judge Reilly observed were recounted in a litany of errors:

- "A 'reasonably competent attorney' would have corrected the circuit court at both the final pretrial hearing and the trial/plea date that Jackson was not facing forty-six years in prison on an armed robbery charge if he went to trial." Id., ¶63 (Reilly, J., dissenting) (footnote omitted).

- "A reasonably competent attorney would have challenged the State's breach of its plea offer." Id.

- "A reasonably competent attorney would have understood that a second-degree reckless homicide charge is

5

materially different from a charge of second-degree reckless homicide <u>as a party to the crime</u>." <u>Id.</u>

- "A reasonably competent attorney would have provided his client with a pretrial offer and discussed the offer with his client prior to the day of trial." <u>Id.</u>

- "A reasonably competent attorney would have met with and prepared both his client and witnesses prior to the trial date." <u>Id.</u>

- "A reasonably competent attorney would have procured, produced, and argued evidence that Jackson was not the 'shooter' but was blocks away when Bobby Henderson shot Carter." <u>Id.</u>

¶23 In Judge Reilly's view, the "objective facts . . . show that Jackson was the lookout rather than the shooter." <u>Id.</u>, ¶64. It is true that that there is no difference in the level of felony or permissible sentencing range for a conviction as a principal as opposed to a conviction as PTAC. <u>See</u> Wis. Stat. §§ 939.05(2), 940.06. But "[f]or anyone to suggest that a judge at sentencing would treat a cold-blooded killer the same as a 'lookout' is sorely lacking in the understanding of what a judge at sentencing is tasked with doing." <u>Jackson</u>, No. 2019AP2383-CR, at ¶81 (Reilly, J., dissenting).

¶24 Jackson seeks from this court a remand to the circuit court for additional fact-finding. This court should decide whether he is entitled to this remedy. Without a decision in this case, we leave a conviction intact without examining the

6

circumstances that led to what a judge of the court of appeals referred to as a failure of both the court and the entire justice system. See id., ¶88 (Reilly, J., dissenting). Such a perceived "failure" should surely be worthy of our review.

¶25 For the foregoing reasons, I respectfully dissent.

¶26 I am authorized to state that Justice REBECCA FRANK DALLET joins this dissent.

7