**2025 WI 10**

# Supreme Court of Wisconsin



HAYDEN HALTER, et al.,
*Plaintiffs-Appellants,*

*v.*

WISCONSIN INTERSCHOLASTIC ATHLETIC ASSOCIATION,
*Defendant-Respondent-Petitioner.*

No. 2021AP1525
Decided April 8, 2025

REVIEW of a decision of the Court of Appeals
Racine County Circuit Court (Eugene A. Gasiorkiewicz, J.) No.
2019CV0830

HAGEDORN, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, KAROFSKY, PROTASIEWICZ, JJ., joined. PROTASIEWICZ, J., filed a concurring opinion, in which KAROFSKY, J., joined. ZIEGLER, C.J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY, J., joined.

¶1 BRIAN HAGEDORN, J.   High school athlete Hayden Halter was ejected from a varsity wrestling meet for unsportsmanlike conduct. The Wisconsin Interscholastic Athletic Association (WIAA) has a rule that requires an athlete who has been disqualified from an event for unsportsmanlike conduct to serve a suspension "at the next competitive event." The next varsity wrestling match was regionals of the WIAA State Tournament—the necessary next step in Halter's quest to win a state title, as he had the year before. Although he had wrestled exclusively at the

varsity level in his high school career, Halter tried to sign up for a junior varsity event before regionals and serve his suspension there. The WIAA did not agree that this would satisfy his suspension. Halter and his father then sought and obtained a temporary restraining order in circuit court, participated in regionals, and eventually won the state championship again.[1] The litigation over his eligibility, however, continued. The circuit court had further hearings and ruled in favor of the WIAA, which the court of appeals then reversed.

¶2    This case comes before us as a writ of certiorari, a procedure generally reserved for review of the decisions of lower tribunals. Under certiorari, judicial review is limited. One ground upon which a decision may be challenged is whether the decision was within reason or was arbitrary. Here, the Halters contend the WIAA arbitrarily and unreasonably interpreted and applied its suspension and appeals rules.

¶3    We need not decide, nor is it clear, whether the WIAA is the type of organization, and these are the types of decisions, that can be reviewed under certiorari. We conclude that even if we assume this challenge is reviewable via certiorari, the Halters still cannot succeed. The record is clear that the WIAA acted reasonably in the interpretation and application of its rules. We reverse the decision of the court of appeals.

## I.  BACKGROUND

¶4    As we discuss further below, in a common law writ of certiorari, we limit our review to the record of the agency when it made its decision. *State ex rel. Brookside Poultry Farms, Inc. v. Jefferson Cnty. Bd. of Adjustment*, 131 Wis. 2d 101, 119, 388 N.W.2d 593 (1986). As such, the factual background is based on the documents the WIAA stated it considered to be the record before the circuit court, which the Halters do not contest before us.

### A.  THE WIAA

¶5    The WIAA is a voluntary, nonprofit organization that "sets and enforces rules and regulations" for interscholastic athletics in

---

[1] For clarity, we use "Halter" in this opinion as a reference to Hayden, even though his father is a co-litigant.

Wisconsin.  The WIAA's membership consists of schools that join it, which includes all public senior high schools in Wisconsin.

¶6      The WIAA has a Constitution, Bylaws, Rules of Eligibility and Season Regulations that member schools agree to abide by as a condition of membership. The Season Regulations are rules governing in-season sports,[2] which the WIAA's governing body, the Board of Control, promulgates in fall, winter, and spring editions each year. Member schools agree when they join that the Board of Control "shall have sole authority to interpret the provisions of the CONSTITUTION, BYLAWS, and RULES OF ELIGIBILITY, and any other regulations which are adopted."  And each year, member high schools sign the "Senior High Membership Renewal" form, by which they agree to conduct their athletic programs "in accordance with . . . the interpretations and decisions of the WIAA Board of Control." The issues in this case concern the WIAA's interpretation and application of the Winter 2018–2019 Season Regulations governing wrestling.

## B.  RULE 8(a)

¶7      The 2018–2019 Winter Season Regulations applicable to wrestling included Rule 8(a), the interpretation and application of which Halter challenges. It stated: "A student, disqualified from a contest for flagrant or unsportsmanlike conduct, is suspended from interscholastic competition for no less than the next competitive event (but not less than one complete game or meet)."

---

[2] The WIAA Bylaws say:

> A school is required to follow season regulations, playing rules, and tournament procedures as annually revised and published by the Board of Control. These regulations, rules, and procedures are found in the publications entitled SEASON REGULATIONS.
>
> . . . .
>
> It is the responsibility of the administration of each school to follow the rules contained in the SEASON REGULATIONS in competition with both member and nonmember schools.

¶8     The WIAA had published guidance on the "proper interpretation" of Rule 8(a) and Article VII, Section 4 of the Rules of Eligibility, which contained identical language. Two examples are relevant here:

> **Question**: A player is ejected, for unsportsmanlike conduct, from a J.V. football game, on Thursday night. There is a varsity game scheduled for Saturday, with the next J.V. game being scheduled for next Thursday night. When does this player serve his suspension? **Answer**: The suspension must be served by missing the appropriate game. If the athlete was slated to play in the varsity game on Saturday, he serves his suspension by missing that game. If he normally would not play in that game, he must miss the junior varsity game on the following Thursday night.

> **Question**: A player was ejected from a varsity football game, on Saturday, for unsportsmanlike conduct. There is a junior varsity game scheduled for next Thursday, with the next varsity game being next Saturday. When does this athlete serve his suspension? **Answer**: This suspension must be served at the next varsity contest, which is next Saturday. A suspension received at a higher level cannot be satisfied by missing a lower-level contest.

These examples were published long before the events at the end of the 2018–2019 wrestling season at issue here.

¶9     Each year, the high school wrestling season culminates in the WIAA State Tournament, which consists of three rounds: regionals, sectionals, and the state finals. As the 2018–2019 State Tournament approached, Wade Labecki, the WIAA deputy director and wrestling liaison, sent an email to each member school's athletic director. The email, dated January 29, 2019, reminded athletic directors about Winter Season Regulation 8(a). It said:

> *Important Note to Coaches!*

> Keep in mind, any wrestler who is ejected from competition in their last event before regionals (typically conference tournaments), for any reason, *will be ineligible for regional competition the following week.*

. . . For some, missing the next event (regionals) means
they are eliminated from the State Tournament series.

¶10    Jill Stobber, the athletic director for Waterford Union High
School, received Labecki's email and forwarded it to the school's wrestling
coaches the same day.

## C.  HAYDEN HALTER

¶11    One of Waterford's wrestlers was sophomore Hayden Halter,
who had won the state championship for his weight class as a freshman
while wrestling for Burlington High School. Halter was on track to return
to the State Tournament leading up to the conference meet on February 2.
At the end of the final match, Halter received an unsportsmanlike conduct
call for cursing at an official. Then, after winning the match, he received a
second unsportsmanlike conduct call for flexing at the opposing crowd. The
officials reviewed and upheld the second unsportsmanlike call and ejected
Halter from the match. The official who made the calls reported it to the
WIAA.

¶12    Two days later, the WIAA's Labecki emailed Waterford
Athletic Director Stobber. He included the official's report, along with
references to the WIAA rules, including Winter Season Regulation 8(a).
Labecki reminded Stobber that Halter "must miss the next event on [the]
schedule for having been ejected." The next varsity-level event was the
regionals round of the State Tournament.

¶13    The next day, Badger High School in Lake Geneva was
hosting its annual Badger Junior Varsity Wrestling Invitational. The
Waterford High School wrestling coaches tried to enter Halter in the meet.
One of the coaches told Badger High School Athletic Director Jim Kluge
that Halter was eligible to participate because he had only wrestled in six
of his maximum seven multi-school meets. The coach also told Kluge that
Halter would be sitting out to serve his suspension. Kluge did not sign off
on Halter's entry and emailed Labecki about the exchange.

¶14    The following day, Labecki reached out to the athletic
directors of both Waterford and Burlington High Schools for information
about what level—varsity or junior varsity—Halter wrestled at during the
2017–2018 and 2018–2019 seasons. The athletic directors confirmed that
Halter wrestled exclusively in varsity meets his freshman and sophomore

years. In this email exchange, Labecki told Halter's coach and Stobber that "the suspension for an ejection must be on the same level" of competition as the meet in which the ejection occurred.

¶15     The next day, Labecki emailed Jeremy Schlitz, who at the time was the president of the Wisconsin Athletic Directors Association. He asked Schlitz three questions regarding how the Athletic Directors Association understood Rule 8(a):

> 1. When a varsity athlete is ejected from a varsity contest, what is your understanding of the level that the athlete must serve the suspension to satisfy the rule?

> 2. Can it be served at the varsity reserve, JV, or 9th grade levels?

> 3. Do you believe that the Wisconsin Athletic Directors Association membership of athletic directors also has this understanding?

Shlitz answered that a varsity athlete ejected from a varsity contest would need to serve his suspension at the varsity level. The suspension could not be served at varsity reserve, JV, or 9th grade competitions. He further believed the Wisconsin Athletic Directors shared that understanding.

¶16     Labecki ultimately told Halter's coach that the junior varsity event did not "fulfill [Halter's] obligation and that his season was over." In other words, Halter had to serve his suspension at regionals, and he would not be able to compete for another state championship. Labecki's decision was ultimately confirmed by WIAA Executive Director Dave Anderson.

¶17     Halter and his father immediately sought to appeal the unsportsmanlike conduct calls made at the February 2 meet and the WIAA's decision about Halter's suspension. Seemingly in response to Halter's appeal of the unsportsmanlike conduct calls, WIAA's counsel responded that the only appeal available "takes place at the mat."[3] It

---

[3] Halter does not challenge the unsportsmanlike calls he received at the conference tournament before us.

appears that he did not address whether Halter could appeal the suspension itself, which WIAA contends is not permitted by the rules.

## D. PROCEEDINGS BELOW

¶18 Hayden Halter and his father, Shawn Halter, then filed a case in Racine County Circuit Court seeking to enjoin the "WIAA from enforcing the suspension and disqualification" on multiple grounds. On February 8, the court granted a temporary restraining order, which allowed Halter to wrestle in the regional varsity tournament on February 9. Halter ended up advancing through the State Tournament and eventually won another individual state wrestling championship for his weight class. Despite winning on the mat, the litigation continued because if the temporary injunction was vacated, Halter would lose his championship under the WIAA rules.

¶19 Two years after Halter's win, the circuit court—now with a different judge presiding—held a full trial on their claims.[4] This time, the circuit court found for the WIAA and dismissed the case. The Halters appealed, and the court of appeals reversed. *Halter v. Wis. Interscholastic Athletic Ass'n*, 2024 WI App 12, ¶¶1, 45, 411 Wis. 2d 191, 4 N.W.3d 573. The WIAA then petitioned this court for review, which we granted.

## II. DISCUSSION

### A. PRELIMINARY ISSUES

¶20 The Halters' only fully developed legal claim is for a writ of certiorari. Before tackling that claim, we discuss three preliminary issues. We first address two arguments the Halters nominally raise, but do not develop. We then address the state actor question, an issue we conclude is not relevant given the claims made here.

---

[4] The Honorable Michael J. Piontek presided over the temporary restraining order hearing; the Honorable Eugene A. Gasiorkiewicz presided over the trial for a permanent injunction.

¶21    First, the Halters contend they are entitled to declaratory relief under WIS. STAT. § 806.04(1) (2017–18).[5] Under this statute, courts have power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." *Id.* A party seeking declaratory relief must have, among other things, a legally protected interest. *Fabick v. Evers*, 2021 WI 28, ¶9, 396 Wis. 2d 231, 956 N.W.2d 856. The Halters assert Hayden Halter has "a legally protected right, as all students of WIAA member schools do, to have WIAA eligibility and appeal rules applied to him in a fair, reasonable, and nonarbitrary manner." As appealing as this may sound on the surface, the Halters muster no legal authority in support of a general legal right under Wisconsin law to fairness in his athletic endeavors. The only authority the Halters point to for this broad, yet-unheard-of right is a portion of *State v. Smith* discussing substantive due process. 2010 WI 16, ¶14, 323 Wis. 2d 377, 780 N.W.2d 90. However, the Halters do not bring or develop a substantive due process argument beyond this generic citation. In short, the Halters simply do not develop an argument that Hayden Halter has a *legal* interest that could entitle him to declaratory relief. As such, his request for declaratory relief must fail.

¶22    Second, the Halters suggest courts can review a voluntary organization's application of its own rules if it does so in an "unfair" or "arbitrary" manner. It is unclear whether the Halters advance this argument as a separate claim for relief or simply as a predicate to review his certiorari and declaratory judgment claims. In any event, the Halters have not developed an argument as to why Wisconsin courts should entertain review of a voluntary association's internal rules.[6] We will not develop that argument for them, and therefore do not address it. *See Serv.*

---

[5] All subsequent references to the Wisconsin Statutes are to the 2017–18 version unless otherwise indicated.

[6] Halter cites cases in support from the Seventh Circuit Court of Appeals and Kentucky Court of Appeals. *See Crane v. Ind. High School Athletic Ass'n*, 975 F.2d 1315 (7th Cir. 1992); *Ky. High Sch. Athletic Ass'n v. Hopkins Cnty. Bd. of Educ.*, 552 S.W.2d 685 (Ky. Ct. App. 1977), *overruled on other grounds by Nat'l Collegiate Athletic Ass'n v. Lasege*, 53 S.W.3d 77 (Ky. 2001). Both cases essentially held, for reasons based upon Indiana and Kentucky law respectively, that courts could review the decisions of voluntary associations if their internal rules were interpreted and enforced in an unreasonable, unfair, or arbitrary manner. *See Crane*, 975 F.2d at 1320; *Hopkins Cnty. Bd. of Educ.*, 552 S.W.2d at 687. What Halter fails to do is develop an argument under Wisconsin law.

*Emps. Int'l Union, Loc. 1 v. Vos*, 2020 WI 67, ¶24, 393 Wis. 2d 38, 946 N.W.2d 35 ("We do not step out of our neutral role to develop or construct arguments for parties; it is up to them to make their case.").

¶23     Finally, we see no need to address whether the WIAA is a "state actor." The parties spill much ink debating this question, seemingly in response to the court of appeals' view that this was a "threshold question" to any type of review, including certiorari review.[7] *See Halter*, 411 Wis. 2d 191, ¶11. But we are unconvinced this is a threshold inquiry for Halter's certiorari claim.

¶24     The state actor doctrine is one of federal constitutional law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982). Since "most rights secured by the Constitution are protected only against infringement by governments," not private persons, courts must determine if the offending party's actions can be "fairly attributable to the State." *Id.* at 936–37. In other words, the doctrine asks whether the offending party is properly considered a "state actor" when plaintiffs claim a violation of their constitutional rights. If the actions are properly attributed to the state, they are subject to scrutiny under the federal constitution.

¶25     The Halters do not, however, raise any constitutional claims before us. Therefore, the question of whether the WIAA's actions in this case should receive scrutiny under the Fourteenth Amendment or some other constitutional provision is simply not at issue. The Halters' claims are entirely based in state law, not the Constitution.

¶26     The Halters' main claim is for a writ of certiorari—which asks a different type of question. As discussed further below, certiorari is a mechanism for reviewing decisions of municipalities, administrative agencies, and quasi-judicial tribunals. *State ex rel. City of Waukesha v. City of Waukesha Bd. of Rev.*, 2021 WI 89, ¶18, 399 Wis. 2d 696, 967 N.W.2d 460. Thus, the relevant question would appear to be whether the WIAA is the type of organization whose decisions are subject to common law certiorari review—i.e., a municipality, administrative agency, or quasi-judicial

---

[7] Given our decision reversing the court of appeals, the court of appeals' holding on the state actor question is also no longer binding. *See State v. Stevens*, 2012 WI 97, ¶80, 343 Wis. 2d 157, 822 N.W.2d 79 (reaffirming the rule that a court of appeals decision reversed by this court no longer has precedential value).

tribunal—not necessarily whether it is a "state actor." Yet the parties did not address this question, and the WIAA expressly declined to challenge whether it was subject to certiorari review in circuit court.[8] Given this, we focus on the state common law certiorari claim brought by the Halters, and need not address whether the WIAA is a state actor.

¶27    With these preliminary matters in place, we proceed to the remaining claim before us and assume without deciding certiorari review is proper for this case. We ultimately agree with the WIAA that it reasonably interpreted and applied Rule 8(a) and its appeal rule to Halter. Therefore, his claim for certiorari—even if proper—does not succeed.

## B. CERTIORARI REVIEW GENERALLY

¶28    A writ of certiorari is the mechanism by which courts test the decisions of quasi-judicial tribunals, administrative agencies, and municipalities to determine whether they acted within their lawful authority. *See id.*, ¶19; *see also* 9 JAY E. GRENIG, WIS. PL. & PR. FORMS § 83:7 (5th ed.). Judicial review under certiorari is limited to whether the tribunal: (1) stayed within its jurisdiction; (2) acted according to a correct theory of law; (3) acted arbitrarily, oppressively, or unreasonably; and (4) made a determination that was reasonable given the evidence before it. *See Ottman v. Town of Primrose*, 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411.

¶29    In a common law certiorari claim, we limit our review to the record compiled by the tribunal in making its decision. *State ex rel. Brookside Poultry Farms, Inc.*, 131 Wis. 2d at 119. In this case, that means we limit our review to what was before the WIAA when it decided that the Badger JV Invitational did not satisfy Halter's suspension and that he had to serve it at regionals, and that Halter was not entitled to an appeal of that decision. This includes: (1) the January 29 email from Labecki to all WIAA member-school athletic directors; (2) the ejection report; (3) all email correspondence between Labecki and athletic directors and coaches on the matter between

---

[8] The WIAA did not challenge the appropriateness of certiorari review before the circuit court. There it said, while it was "not conceding that it is subject to certiorari review," it was not challenging it "for purposes of this case only." And even in its briefs before this court, the WIAA assumed arguendo that certiorari was appropriate. It was not until oral argument that the WIAA contested that it was the type of organization subject to certiorari review, but it did not provide a legal argument as to why it was not.

February 4–6; (3) the February 7 email between Labecki and the president of the Wisconsin Athletic Directors Association, Schlitz; (4) all the WIAA handbooks, rules, regulations and bylaws; and (5) the WIAA Guidance on Ejected Players.[9]

¶30    With that background and the record in focus, we turn to the issues before us.  The Halters' legal claims focus on the third basis for which relief via certiorari may be granted—that is, whether in Hayden Halter's case, the WIAA applied its rules arbitrarily or unreasonably. A tribunal or agency acts arbitrarily and unreasonably if its action "represented its will and not its judgment," such that it "is the result of an unconsidered, willful or irrational choice." *Van Ermen v. State Dep't of Health & Soc. Servs.*, 84 Wis. 2d 57, 63, 64–65, 267 N.W.2d 17 (1978). The Halters argue the WIAA acted unreasonably and arbitrarily in its application of Hayden's disqualification under Rule 8(a) and its handling of his appeal.

### C.  RULE 8(a)

¶31    Rule 8(a) is the relevant in-season rule upon which Hayden Halter's disqualification rests. It states: "A student, disqualified from a contest for flagrant or unsportsmanlike conduct, is suspended from interscholastic competition for no less than the next competitive event (but not less than one complete game or meet)."

¶32    In Halter's case, the WIAA interpreted the Rule to require that an athlete miss the next competitive event at the same level of competition that he was disqualified from and consistently participates at. The Halters say this is an unreasonable and arbitrary way to interpret and apply this Rule. They argue that the Rule only required Hayden to sit out the next match he was eligible to participate in, regardless of what level of competition it was. Even if the Halters' reading is possible, we conclude WIAA's interpretation was—at the very least—reasonable given the

---

[9] This is what the WIAA considered the certiorari record before the circuit court. The circuit court, however, proceeded to take additional evidence. In some statutory certiorari cases, the circuit court may take additional evidence, but that is not the rule in common law certiorari. *See Ottman v. Town of Primrose*, 2011 WI 18, ¶¶35–36, 332 Wis. 2d 3, 796 N.W.2d 411. We do not see a need to extend our review to the circuit court's additional record. We are reviewing the WIAA's decision, rather than the circuit court's decision. We therefore keep to these documents the WIAA identified, which Halter did not contest before us.

purpose of the Rule, the WIAA's published guidance on its interpretation, and the evidence showing how others understood it.

¶33     First, the Rule's obvious purpose, evident from its text, is to discipline an athlete disqualified for "flagrant or unsportsmanlike conduct." If athletes could satisfy their suspensions by sitting out events they had no intention of participating in, the Rule would be easily skirted, and poor conduct would go unpunished. Reading the Rule this way would allow athletes an end run around the Rule to avoid a real consequence. It was reasonable for the WIAA to interpret the Rule as requiring a disqualified athlete to sit out of the next event he was planning to participate in at the same competitive level. This is consistent with the text and furthers the Rule's purpose of imposing real punishment on athletes who exhibit bad behavior. It, therefore, did not act arbitrarily in requiring Halter to sit out of regionals—the next event at the competitive level he had always competed at.

¶34     Second, the WIAA interpreted the Rule in line with its published guidance. The WIAA points to two guidance examples resembling Halter's situation. One contemplates a player ejected from a junior varsity game and asks whether the player can serve his suspension at an upcoming varsity football game on Saturday, or whether he must serve it at the next junior varsity game the following Thursday. The guidance document says that the "suspension must be served by missing the appropriate game," meaning that if the athlete "was slated to play in the varsity game . . . he serves his suspension by missing that game." If, however, the athlete "normally would not play in [the varsity] game, he must miss the junior varsity game." The other example queried whether a player ejected from a varsity football game on a Saturday may serve his suspension at the junior varsity game the upcoming Thursday, or if he must wait to serve it at the next varsity game. The answer was that the player must serve the suspension at the varsity game, since a "suspension received at a higher level cannot be satisfied by missing a lower-level contest." The WIAA thus acted consistent with its published guidance, reinforcing the purpose of the Rule: actual punishment. It therefore acted reasonably, and not arbitrarily, when it required Halter—a reigning state champion who had never wrestled in a junior varsity meet—to serve his suspension at the next varsity event.

¶35     Finally, the certiorari record demonstrates that others understood the Rule to require an athlete to sit out an event at the same level. After Halter tried to enter into the Badger JV Invitational, Labecki

emailed Jeremy Schlitz, the then-president of the Wisconsin Athletic Directors Association, about his understanding of the Rule. Schlitz responded that it was his belief that the members of the Wisconsin Athletic Directors Association shared Schlitz's understanding that a varsity athlete ejected from a varsity contest would need to serve his suspension at the varsity level. This demonstrates that those subject to the rules could, and in fact did, interpret the Rule the same way that the WIAA did. The record shows that the WIAA did not decide to apply the Rule to Halter arbitrarily; it applied the Rule consistent with the prevailing understanding.

¶36    Additionally, before Halter even set foot on the mat at the conference championship, Labecki sent an email to all athletic directors, including Waterford's Stobber, marked, "Important Note to Coaches!" The email said that "any wrestler who is ejected from competition in their last event before regionals (typically conference tournaments), for any reason, will be ineligible for regional competition the following week." After Halter's ejection, Labecki emailed Stobber again, this time with the ejection report and a message that Halter "must miss the next event on your schedule for having been ejected." Labecki's interpretation of the Rule as applied to Halter was consistent with what he communicated to all athletic directors before Halter's ejection even occurred.

¶37    Thus, while the Halters suggest that Rule 8(a) should be read to allow athletes to avoid any punishment for their behavior, that does not make the WIAA's interpretation as applied to Halter unreasonable. The WIAA's reading is derived from Rule 8(a)'s text, furthers its evident purpose, is consistent with prior published guidance, and is supported by the prevailing understanding of the Rule by others. At the very least, the record can be read to support this view, and that is enough to defeat the Halters' claim. To say it another way, given the narrow role for this court in certiorari review, we are not concerned with the best way to read the Rule. We are concerned only with whether the WIAA's approach was reasonable, and not arbitrary.[10] And it clearly was.

---

[10] The Halters' position here appears doubly problematic given that WIAA member schools agree to give the WIAA the final say in interpreting its own rules. The member schools all sign the Senior High Membership Renewal Form each year. This express agreement has the member schools acknowledge and defer to the WIAA's lawful authority to interpret its own rules and guidelines.

¶38 The Halters offer several counterarguments—none persuasive. First, they argue that the Rule says nothing about requiring the suspension be at the same level of competition. True, the Rule is silent about the level of competition at which the suspension should be served. But that does not mean the Rule should be read as leaving it up to the player or coaches to game the system. Rather, it was eminently reasonable—commonsense even—to read the Rule to impose a meaningful, actual suspension for bad behavior. And whatever the virtues of the Halters' reading might be, it certainly does not rise to the level of being the only way to read the Rule or otherwise make WIAA's understanding unreasonable.

¶39 Second, the Halters argue that the guidance examples WIAA cites in support of its interpretation of Rule 8(a) are inapposite because they involved team sports, not individual sports like wrestling. This distinction is without a meaningful difference. At best, the Halters' effort to distinguish the examples might be grounds to give them less weight. But they nonetheless support the consistent picture of how the WIAA both understood and applied Rule 8(a) and its analogue in the Rules of Eligibility. And the guidance examples unequivocally support WIAA's application of the Rule to Halter.

¶40 Finally, following the Halters' challenge, the WIAA changed Rule 8(a) to explicitly state that the suspension be served at the same level. The Halters say this shows that WIAA "believed the rule to be ambiguous and open to interpretation." Because it was ambiguous, they argue, the court should resolve the Rule's ambiguous language in favor of the Halters. This argument is self-defeating. We traditionally describe a text as ambiguous when it "is capable of being understood by reasonably well-informed persons in two or more senses." *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶47, 271 Wis. 2d 633, 681 N.W.2d 110. The Halters have failed to show that reasonably well-informed persons could not understand the Rule to require what the WIAA says it does, and thus, we cannot disturb that reading under certiorari. Furthermore, the Halters' claim that an ambiguity should be resolved in their favor is an ill-fit given their claims. They argue that "ambiguities in drafting (whether contractual bylaws or any other contract) are resolved against the drafter." But the Halters do not bring a contract claim nor argue that there is a contractual relationship between Hayden Halter and the WIAA. This principle is therefore inapplicable here.

¶41 At the end of the day, the Halters miss our role in certiorari review. We are concerned only with whether the relevant decision maker

acted reasonably. The evidence in the record overwhelmingly shows WIAA's reading is, at the very least, reasonable, and that its application to Hayden Halter was consistent with the prevailing understanding, practice, and communications about the Rule prior to the event. Accordingly, the Halters' Rule 8(a) certiorari claim fails.

## D.  THE WIAA APPEAL RULE

¶42    The WIAA provides a structured appeal process for some rule violations, but not all of them. Namely, a violation of the generally issued Rules of Eligibility is appealable; but a violation of sport-specific Season Regulations is not.[11] Here, the text of Rule 8(a) in the Season Regulation—which was the basis for Hayden Halter's disqualification—is essentially identical to language also found in the Rules of Eligibility. The Halters contend this scheme is arbitrary and irrational because it allows appeals regarding the same language under the general Rules of Eligibility, but not Rule 8(a) of the wrestling-specific Season Regulations. We have no trouble concluding that WIAA's decision disallowing appeals relating to the rules governing in-season sports, but allowing them for out-of-season general rules, is reasonable and not arbitrary.

¶43    The WIAA contends that it makes this distinction because the Board of Control—the governing board that hears appeals of the Rules of Eligibility—is not structured to hear the large number of appeals that would arise during a sport season. It simply does not have the capacity for such an undertaking. This is a reasonable explanation for the scheme. Whether this is the best rule or not, we see nothing patently unreasonable about such a decision.

¶44    Furthermore, this structure is anything but arbitrary. The WIAA did not spring this on Halter, nor apply it to him uniquely. The appeal scheme has a logical and consistent structure: if the interpretation concerns a rule applied during a sport's season, it cannot be appealed; if it

---

[11] Under the WIAA's appeal rules listed in Appendix A, Section A of its Senior High Handbook, an appeal is available for "a decision or . . . ruling or interpretation of the Executive Director relative to the provisions of the Constitution, Bylaws, Rules of Eligibility, or Guide for Officials." Notably absent is the provision for an appeal of sport-specific Season Regulations.  And Section B states that "[t]he WIAA Appeals Procedures do not apply to . . . any other determinations not specifically set forth" in Section A.

concerns an interpretation of a general Rule of Eligibility, it generally can be appealed. This structure does not allow the WIAA to arbitrarily pick and choose what appeal rule applies in a given situation. It provides a knowable and predictable framework for handling appeals. Seeing no reason why the WIAA's appealability structure in general and as applied to Halter is arbitrary and irrational, the Halters' petition for writ of certiorari concerning the appeal likewise fails.

### III. CONCLUSION

¶45    Assuming without deciding that the Halters' claims against the WIAA are subject to certiorari review, we conclude the WIAA acted reasonably in its interpretation and application of Rule 8(a) and reasonably applied its appeal rules to Halter. For these reasons, we conclude that the Halters are not entitled to a writ of certiorari, and their request for injunctive relief based on certiorari claims necessarily fails as well. We reverse the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

PROTASIEWICZ, J., with whom KAROFSKY, J., joins, concurring.

¶46     I agree with the majority that the Halters are not entitled to relief. Assuming the Halters' claims are subject to common law certiorari review, the WIAA acted reasonably in the interpretation and application of its rules. However, I write separately because the law does not support certiorari review for decisions of the WIAA, a private organization governed by contract.

¶47     At the outset, I note that the Halters have sought certiorari review for two types of WIAA decisions: a wrestling official's calls at the mat and WIAA's subsequent decisions as an organization. Though I focus on WIAA's organizational decisions in this writing, I pause to address the Halters' request for review of the wrestling official's calls.

¶48     The Halters do not argue about the official's calls in this court, but they did in the circuit court. The circuit court heard evidence and ruled on the propriety of the unsportsmanlike conduct calls. At the risk of stating the obvious, those in-contest decisions should not be subject to judicial review. *See State ex rel. Durando v. State Athletic Comm'n*, 272 Wis. 191, 196, 75 N.W.2d 451 (1956) ("[W]e believe it to be a matter of common knowledge that the decisions of judges, umpires, or referees in athletic contests and games are to be final and not subject to reversal . . . ."). These decisions do not qualify for certiorari review for all the reasons below, but my concern doesn't end there. If we allow review of in-contest calls, we risk embarking on a slippery slope toward emergency hearings every time there is a question of whether a three-point shooter's toe was on the line or a pass interference flag should have been thrown. Entertaining such review would siphon slim judicial resources and undermine the finality of sport.

¶49     Setting the in-contest decisions aside, I turn to the type of decisions the Halters raise in front of this court. I determine that decisions made by the WIAA—a private organization governed by contract—are a poor fit for certiorari review.[1]

---

[1] The parties and the court of appeals do not address the arguments made here. Accordingly, I join the majority opinion's analysis in full. *See State v. Steffes*, 2013 WI 53, ¶28, 347 Wis. 2d 683, 832 N.W.2d 101 (declining to address issues not briefed).

I.  THE WRIT OF CERTIORARI

¶50     Certiorari is a "means of exercising the constitutional power of superintending control over inferior courts and tribunals." *State ex rel. City of Augusta v. Losby*, 115 Wis. 57, 62, 90 N.W. 188 (1902). We apply certiorari review to decisions by "a municipality, administrative agency, or other quasi-judicial tribunal." *State ex rel. City of Waukesha v. City of Waukesha Bd. of Rev.*, 2021 WI 89, ¶18, 399 Wis. 2d 696, 967 N.W.2d 460; *see also Acevedo v. City of Kenosha*, 2011 WI App 10, ¶8, 331 Wis. 2d 218, 793 N.W.2d 500 (identifying review for "inferior tribunals, quasi-judicial bodies and officers").

¶51     Since the WIAA is not a municipality or agency, I focus on "quasi-judicial tribunals" here. Though this court has not settled on a strict definition of such tribunals, illustrative examples include municipal tax assessment boards, state dental licensing boards, and municipal boards of fire and police commissioners. *See, e.g.*, *City of Waukesha*, 399 Wis. 2d 696, ¶16; *State ex rel. Milwaukee Med. Coll. v. Chittenden*, 127 Wis. 468, 471, 107 N.W. 500 (1906); *Schoen v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 2015 WI App 95, ¶19, 366 Wis. 2d 279, 873 N.W.2d 232. We have suggested that quasi-judicial tribunals operate under a deliberative, adjudicative process. *See, e.g.*, *State v. Grootemaat*, 202 Wis. 155, 168, 231 N.W. 628 (1930) (holding a board is "undoubtedly quasi judicial" where its decision-making process involved "a complaint, notice of hearing, opportunity to be heard, the evidence reduced to writing, findings made thereon, and a determination"); *Schoen*, 366 Wis. 2d 279, ¶¶4-5 (quasi-judicial board held a "two-phase hearing" in which "both parties submitted evidence, examined and cross-examined witnesses and made closing arguments").

¶52     We have outlined the scope of certiorari review. A court doing certiorari review is "limited to" four inquiries. *Ottman v. Town of Primrose*, 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411. Those are:

> (1) whether the [tribunal] kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Id.* In conducting those inquiries, "a court reviews the record compiled by the [tribunal] and does not take any additional evidence." *Id.*; *see also City of*

*Waukesha*, 399 Wis. 2d 696, ¶19 ("[T]he reviewing court's inquiry is . . . limited to the record before the board . . . .").

¶53     Importantly, "certiorari is not a remedy for the resolution of contractual disputes between private persons." *Coleman v. Percy*, 86 Wis. 2d 336, 340, 272 N.W.2d 118 (Ct. App. 1978), *aff'd*, 96 Wis. 2d 578, 292 N.W.2d 615 (1980). It is "an inadequate remedy for breach of contract." *Id.* at 341.

## II.  THE WIAA AND CERTIORARI

¶54     The WIAA is not the type of organization subject to certiorari review. *See City of Waukesha*, 399 Wis. 2d 696, ¶18 (holding that our courts apply certiorari review to decisions by "a municipality, administrative agency, or other quasi-judicial tribunal"). The WIAA is unlike other quasi-judicial tribunals for two reasons: it is a private organization and it is governed by contract. And on the facts of this case, we have a third reason why certiorari review is inappropriate—the WIAA acted unlike a tribunal.

¶55     First, the WIAA is private. It is a voluntary, nonprofit, private organization. No statute created the WIAA or mandates its existence. And we have no evidence that the WIAA receives any state funding.

¶56     But our courts do not do certiorari review for private entities. *See Coleman*, 86 Wis. 2d 336, 340 ("[C]ertiorari is not a remedy for the resolution of contractual disputes between private persons."). Indeed, the quasi-judicial tribunals subject to certiorari review are not private—they are government entities. *See, e.g., City of Waukesha*, 399 Wis. 2d 696, ¶16 (municipal tax assessment board); *Milwaukee Med. Coll.*, 127 Wis. 468, 471 (state licensing board); *Schoen*, 366 Wis. 2d 279, ¶19 (municipal board of police and fire commissions).[2] And BLACK'S LAW DICTIONARY defines "quasi-judicial" to entail governmental actors—"executive or administrative official[s]." *Quasi-judicial*, BLACK'S LAW DICTIONARY 1503

---

[2] I am aware of only one case considering certiorari review for a private entity. In that case, the court of appeals allowed review of an out-of-state private prison under "unique circumstances" including reliance by an agency and a statute evidencing legislative intent to allow judicial review. *See State ex rel. Curtis v. Litscher*, 2002 WI App 172, ¶¶11–14, n.6, 256 Wis. 2d 787, 650 N.W.2d 43. Such unique circumstances do not exist here.

(12th ed. 2024) ("Of, relating to, or involving an executive or administrative official's adjudicative acts.").[3]

¶57     Moreover, if a court did certiorari review for private entities, some of its review would make little sense. On certiorari review, a court asks whether "the [tribunal] kept within its jurisdiction." *Ottman*, 332 Wis. 2d 3, ¶35. While a quasi-judicial tribunal may have a jurisdiction, a private organization does not. No law has given the WIAA a legal jurisdiction.

¶58     Second, the WIAA is unlike quasi-judicial tribunals because it is governed by contract. The WIAA is governed by a Constitution, Bylaws, Rules of Eligibility, and Season Regulations, which all member schools sign on to. And member schools give the WIAA governing body "sole authority to interpret" WIAA regulations.

¶59     But "certiorari is not a remedy for the resolution of contractual disputes between private persons." *Coleman*, 86 Wis. 2d 336, 340. It is "an inadequate remedy for breach of contract." *Id.* at 341.

¶60     Unlike the WIAA, quasi-judicial tribunals are governed by law. *See, e.g.*, *Ottman*, 332 Wis. 2d 3, ¶¶13-14 (tax assessment board applying town ordinances); *Schoen*, 366 Wis. 2d 279, ¶¶4-5 (board of police and fire commissioners applying statutes). And BLACK'S LAW DICTIONARY says "[q]uasi-judicial acts . . . often determine the fundamental rights of citizens," not contractual obligations. *Quasi-judicial*, BLACK'S LAW DICTIONARY 1503 (12th ed. 2024).

¶61     Here again, certiorari review would make little sense for the WIAA. Under certiorari review, our courts ask whether the tribunal "proceeded on a correct theory of law." *See Ottman*, 332 Wis. 2d 3, ¶35. But the WIAA makes decisions based on its own contractual obligations, not a theory of law. And its members gave the WIAA's governing body the final say on those regulations.

---

[3] The Halters argue that the WIAA is entwined with the state. For instance, all public high schools are members of the WIAA and many members of the governing board are public school employees. Even so, the WIAA is fundamentally a private entity, making it unlike the targets of the writ of certiorari.

¶62 Finally, I note an additional reason why certiorari review should be unavailable based on the facts of this case. A quasi-judicial tribunal acts under a deliberative, adjudicative process. *See Grootemaat*, 202 Wis. at 168 (holding that a process was "undoubtedly quasi judicial" where it involved "a complaint, notice of hearing, opportunity to be heard, the evidence reduced to writing, findings made thereon, and a determination"). And under certiorari, we review decisions based on a "record." *Ottman*, 332 Wis. 2d 3, ¶35 ("[A] court reviews the record compiled by the [tribunal] and does not take any additional evidence.").

¶63 But here, the WIAA engaged in informal decision making. One member of the WIAA—Wade Labecki—made the decision on Halter's suspension, later approved by the executive director. And outside of a single email exchange, we have little record of any deliberation on the issue of appeal. There was no hearing or presentation of evidence regarding the Halter's claims, and most communication occurred through a series of disjointed emails. *See* majority op., ¶¶12–17 (outlining the decision-making process here). In light of these facts, I cannot say that the WIAA acted as an adjudicative tribunal or that there was a "record" as contemplated by certiorari review.

¶64 In the end, the writ of certiorari is a "means of exercising the constitutional power of superintending control over inferior courts and tribunals." *City of Augusta*, 115 Wis. at 62. The WIAA is not an inferior tribunal subject to our superintending control. It is a private organization governed by contract. Our courts cannot review its decisions via a writ of certiorari.[4] I question whether it is a wise use of judicial resources to review the claims that the Halters brought to our courts. In any case, such claims are not what the writ of certiorari is for.

---

[4] There may, of course, be other procedural vehicles for reviewing decisions by the WIAA. Here, I discuss only the common law writ of certiorari.

ANNETTE KINGSLAND ZIEGLER, C.J., with whom REBECCA GRASSL BRADLEY, J., joins, dissenting.

¶65     The majority decides this case in a manner that does not meaningfully develop the law[1] or answer questions that have statewide importance. Instead, the majority engages in routine error correction. Had this court answered the questions raised by the petition for review, this case would develop the law and resolve issues of statewide importance, potentially even national importance. But the majority walks a different path, one that develops no law and answers questions of importance only to the parties directly before us. Because the majority takes this route, I would dismiss this case as improvidently granted. Accordingly, I dissent.

¶66     This court grants petitions for review as "a matter of judicial discretion, not of right." WIS. STAT. § 809.62(1r). We grant petitions "only when special and important reasons are presented." *Id*. When deciding whether to grant a petition, this court considers the following criteria:

> (a) A real and significant question of federal or state constitutional law is presented.

> (b) The petition for review demonstrates a need for the supreme court to consider establishing, implementing or changing a policy within its authority.

> (c) A decision by the supreme court will help develop, clarify or harmonize the law, and

>  1. The case calls for the application of a new doctrine rather than merely the application of well-settled principles to the factual situation; or

> 2. The question presented is a novel one, the resolution of which will have statewide impact; or

---

[1] Comment, *Petitions for Review by the Wisconsin Supreme Court*, 1979 WIS. L. REV. 1176, 1188 (stating "[l]aw development consists of the impact a decision has, as legal precedent, beyond the immediate parties in a case").

3. The question presented is not factual in nature but rather is a question of law of the type that is likely to recur unless resolved by the supreme court.

(d) The court of appeals' decision is in conflict with controlling opinions of the United States Supreme Court or the supreme court or other court of appeals' decisions.

(e) The court of appeals' decision is in accord with opinions of the supreme court or the court of appeals but due to the passage of time or changing circumstances, such opinions are ripe for reexamination.

*Id.*[2]

¶67    In its petition for review, the Wisconsin Interscholastic Athletic Association (WIAA) argued its petition met these criteria. The WIAA presented five issues for this court to decide: (1) whether the WIAA is a state actor; (2) whether the Halters are entitled to judicial review of the WIAA's decision to suspend Hayden Halter from the 2019 varsity wrestling regional event and deny him an internal appeal; (3) whether the Halters are entitled to certiorari relief; (4) whether the Halters are entitled to declaratory relief reinstating Hayden Halter's 2019 state title; and (5) whether the Halters are entitled to a permanent injunction. The WIAA argued this court should grant its petition for review because this case would "help develop and clarify the appropriate bounds of judicial intervention in cases concerning a voluntary high school athletic association's interpretation and application of its own, member chosen rules to non-member student athletes." Moreover, the WIAA contended that the court of appeals' decision conflicts with this court's decisions, and

---

[2] *See also In re Standards to Review Petitions to Appeal*, 85 Wis. 2d xiii, xiii–xiv (1978) (per curiam) (establishing these criteria); Comment, *Petitions for Review by the Wisconsin Supreme Court, supra*, at 1189 (noting this court's criteria for review "appear to embody the purpose of selecting cases which are likely to be good vehicles for law development").

the case would "present[] novel questions, the resolution of which [would] have statewide impact."[3]

¶68 Although we granted the petition for review, *Halter v. Wis. Interscholastic Athletic Ass'n*, No. 2021AP1525, unpublished order (Wis. Aug. 2, 2024) (granting petition for review), our decision today eschews developing the law in a meaningful manner and resolving issues of statewide importance. The majority concludes that the Halters do not sufficiently develop an argument that they are entitled to declaratory relief because they fail to adequately identify a legally protected interest that could entitle them to declaratory relief. Majority op., ¶21. Likewise, the majority determines that the Halters do not sufficiently develop an argument as to why "courts can review a voluntary organization's application of its own rules if it does so in an 'unfair' or 'arbitrary' manner." *Id.*, ¶22. Accordingly, the majority refuses to address those arguments. *Id.*, ¶¶21–22; *see also State v. Gracia*, 2013 WI 15, ¶28 n.13, 345 Wis. 2d 488, 826 N.W.2d 87 ("[W]e do not usually address undeveloped arguments." (citing *Saddle Ridge Corp. v. Bd. of Rev. for Town of Pacific*, 2010 WI 47, ¶46 n.23, 325 Wis. 2d 29, 784 N.W.2d 527)). As for one of the more pressing questions raised by the petition for review—whether the WIAA is a state actor—the majority concludes that it does not need to address the question at all. Majority op., ¶23. That is so because the Halters raise no constitutional claims in this case. *Id.*, ¶¶24–25. And finally, the majority, instead of addressing whether certiorari review is available in this case, "assume[s] without deciding" that it is. *Id.*, ¶27. With that, the majority reduces the issues in this case to one question, a question for which this court would never have granted the petition for review on its own: "whether in Hayden Halter's case, the WIAA applied its rules arbitrarily or unreasonably." *Id.*, ¶30. Applying this court's already well-established principles of certiorari review, the majority reverses the court of appeals, concluding that the WIAA applied its rules nonarbitrarily and reasonably. *Id.*, ¶¶31–44.

¶69 Although it does so infrequently, this court may dismiss a case for which it previously granted review as improvidently granted. *See, e.g., Amazon Logistics, Inc. v. LIRC*, 2024 WI 15, ¶1, 411 Wis. 2d 166, 4 N.W.3d 294 (per curiam); *Winnebago Cnty. v. D.E.W.*, 2024 WI 21, ¶1, 411 Wis. 2d 673, 5 N.W.3d 850 (per curiam); *State v. Jackson*, 2023 WI 37, ¶1, 407

---

[3] The WIAA also argued its petition presented legal questions that were "likely to recur unless resolved" by this court.

Wis. 2d 73, 989 N.W.2d 555 (per curiam). Reasons for dismissing a case as improvidently granted include[4] when the issues for which the court took the case are not squarely presented, or when deciding the case will not ultimately result in law development. But when issues that would develop the law are squarely presented, this court has a duty to address them. *See, e.g., Doe 1 v. Madison Metro. Sch. Dist.*, 2022 WI 65, ¶88, 403 Wis. 2d 369, 976 N.W.2d 584 (Roggensack, J., dissenting); *Trump v. Biden*, 2020 WI 91, ¶¶110–12, 394 Wis. 2d 629, 951 N.W.2d 568 (Ziegler, J., dissenting); *Hawkins v. WEC*, 2020 WI 75, ¶32, 393 Wis. 2d 629, 948 N.W.2d 877 (Ziegler, J., dissenting).

¶70 "We are not an error-correcting court; we are a law-developing court." *State ex rel. Davis v. Cir. Ct. for Dane Cnty.*, 2024 WI 14, ¶82, 411 Wis. 2d 123, 4 N.W.3d 273 (Ziegler, C.J., dissenting) (first citing *State v. Schumacher*, 144 Wis. 2d 388, 407–08, 424 N.W.2d 672 (1988); and then citing *State v. Lee*, 197 Wis. 2d 959, 970, 542 N.W.2d 143 (1996)); *State v. Wiskowski*, 2024 WI 23, ¶¶100–01, 412 Wis. 2d 185, 7 N.W.3d 474 (Ziegler, C.J., dissenting).[5] This case is not meaningfully law-developing. And while

---

[4] "When this court decides to dismiss a case as improvidently granted, customarily it does not offer an explanation for the dismissal." *Amazon Logistics, Inc. v. LIRC*, 2024 WI 15, ¶9, 411 Wis. 2d 166, 4 N.W.3d 294 (Rebecca Grassl Bradley, J., concurring); *see also State v. Jackson*, 2023 WI 37, ¶¶4–11, 407 Wis. 2d 73, 989 N.W.2d 555 (Rebecca Grassl Bradley, J., concurring) (explaining why this court should continue with its traditional approach); *Winnebago Cnty. v. D.E.W.*, 2024 WI 21, ¶¶2–5, 411 Wis. 2d 673, 5 N.W.3d 850 (Rebecca Grassl Bradley, J., concurring) (same).

[5] *See also Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (stating this court's "primary function is that of law defining and law development"); *State ex rel. La Crosse Trib. v. Cir. Ct. for La Crosse Cnty.*, 115 Wis. 2d 220, 230, 340 N.W.2d 460 (1983) (stating "this court . . . has been designated by the constitution and the legislature as a law-declaring court"); *State ex rel. Swan v. Elections Bd.*, 133 Wis. 2d 87, 93–94, 394 N.W.2d 732 (1986) (per curiam) ("The supreme court is primarily concerned with the institutional functions of our judicial system, while the court of appeals is charged primarily with error correcting in the individual case."); *State v. Mosley*, 102 Wis. 2d 636, 665, 307 N.W.2d 200 (1981) ("It is not the primary purpose of this court any longer merely to correct error in trial court proceedings a function now largely met by the court of appeals but instead to oversee and implement the statewide development of the law." (citation omitted)); *Sanders v. State of Wis. Claims Bd.*, 2023 WI 60, ¶37, 408 Wis. 2d 370, 992 N.W.2d 126 (lead opinion) ("This court is not a lower court; it serves a law-developing

the outcome of this case is certainly important to Hayden Halter, his family, and the WIAA, this case does not involve the resolution of issues of statewide importance. Accordingly, I would dismiss this case as improvidently granted.

¶71     For the foregoing reasons, I respectfully dissent.

---

function." (citations omitted)); *State v. Herrmann*, 2015 WI 84, ¶154, 364 Wis. 2d 336, 867 N.W.2d 772 (Ziegler, J., concurring) ("Unlike a circuit court or the court of appeals, the supreme court serves a law development purpose[.]"); *St. Augustine Sch. v. Taylor*, 2021 WI 70, ¶105, 398 Wis. 2d 92, 961 N.W.2d 635 (Rebecca Grassl Bradley, J., dissenting) (stating that this court "declar[es] the law," rather than simply "selecting winners and losers in litigation contests").